**In re Jacqueline Ann MILLS, d/b/a Champagne Acres, Debtor.**

**Bankruptcy No. 85–30341.**

United States Bankruptcy Court,
S.D. New York.

Aug. 14, 1987.

414

Stults & Marshall, New York City, for debtor; Jon Yard Arnason, of counsel.

Lawrence M. Klein, P.C., Newburgh, N.Y., for Max and Lena Dwosh; Lawrence M. Klein, of counsel.

DECISION ON RELATED MOTIONS SEEKING DETERMINATION OF ATTORNEY FEES PURSUANT TO 11 U.S.C. § 506(b)

JEREMIAH E. BERK, Bankruptcy Judge.

This is a contested matter concerning three related motions. Max and Lena Dwosh ("Dwoshes"), secured creditors, seek a determination of the value of their secured claim and an award of attorney fees under Section 506(b) of the Bankruptcy Code ("Code"). An application for an allowance of attorney fees was also filed by counsel for the Dwoshes as provided by Code Section 506(b). The third motion, filed by the debtor, Jacqueline Ann Mills, ("debtor" or "Mills") pursuant to Federal Rule of Bankruptcy Procedure ("FRBP") 3007 seeks to disallow in part the proof of claim filed by the Dwoshes.

At the final combined hearing held on these three motions, the parties agreed that the sole issue presented is the amount of attorney fees to be allowed to the Dwoshes as part of their secured claim under Code Section 506(b). An overview of the pertinent facts of this case follows.

FINDINGS OF FACT

On August 12, 1985, the debtor *pro se* filed a petition for relief under Chapter 11 of the Bankruptcy Code. On application of the debtor, the case was converted to one under Chapter 13 on September 26, 1985. Shortly thereafter, the debtor filed the first of six Chapter 13 plans ultimately filed by her in the case.

According to her Statement of Financial Affairs, Mills is in the business of breeding, boarding and training thoroughbred race horses. The principal assets of her estate consist of equine ownership interests and livestock as well as real property.

The debtor's real property consisted of two parcels of land. One parcel was described as containing approximately 54 acres and improved by the debtor's home and certain other structures. The other parcel was an unimproved tract of land consisting of 49.86 acres. These parcels, separated from each other by a road, were purchased by the debtor in 1981 for the sum of $85,000.00. Affidavit in Support of Debtor's Application to Sell Property (filed May 7, 1986) (hereinafter "Affidavit in Support of Sale").

Upon commencement of this case, it appears that both parcels of real property were encumbered with various tax liens totalling $9,995.77, a first mortgage in the amount of $17,410.00, and a second mortgage held by Max and Lena Dwosh in the "approximate amount of $41,300, including arrearages of $9,300." *Id.* The Dwoshes had obtained a judgment of foreclosure of their mortgage against Mills. Shortly before the scheduled foreclosure sale, the debtor filed her bankruptcy petition.

As it became apparent that income generated by her business would not be sufficient to fund a plan and cure the mortgage arrears, the debtor proposed to sell the unimproved parcel of real property. Still without the aid of counsel, she drafted and filed a Notice of Sale which sought to sell the unimproved parcel free and clear of all liens, judgments and mortgages, with such interests to be "transfered [sic]" to the improved parcel retained by the debtor. The terms of the proposed sale would have apparently required the debtor to hold a purchase money mortgage from the prospective purchasers. The Dwoshes promptly objected to the debtor's intended sale on the principal ground that the sale did not satisfy the requirements of Code Sections 363(b) and (f). These objections were sustained at a hearing held February 19, 1986.

The debtor again sought to sell the unimproved parcel by application filed March 13, 1986. In addition to the terms of sale described in her prior notice of sale, the debtor, in the alternative, sought by this application to sell the unimproved parcel for $36,000.00 in cash free and clear of all liens. As a result of certain procedural defects, however, this application was denied without prejudice.

The debtor testified that she had offered on March 19, 1986 to distribute the cash proceeds of sale directly to the Dwoshes

pursuant to a stipulation she entered into with the first mortgagee. The Dwoshes apparently rejected this offer.

On March 31, 1986, the debtor filed her third notice of intended sale of real property which proposed to pay the first mortgage and tax liens encumbering both parcels and to cure the arrearages on the second mortgage held by the Dwoshes. By virtue of the first mortgage having been paid in full, the Dwoshes' mortgage position would thereby become first. Affidavit in Support of Sale.

This third attempt by the debtor to sell real property was again opposed by the Dwoshes. Evidentiary hearings were held on their objections in tandem with their objections to confirmation of the debtor's amended Chapter 13 plans.

Ultimately, the opposition by the Dwoshes to the debtor's intended sale of the unimproved parcel was settled. The debtor retained counsel to represent her regarding the objections and obtained an appraisal indicating that the retained parcel afforded sufficient equity to protect the interests of the Dwoshes. A hearing was held on September 16, 1986 on a new motion by the debtor to sell the unimproved parcel pursuant to Code Sections 363(b) and (f). There was no opposition noted by any interested party, including the Dwoshes. An order was entered on October 21, 1986 authorizing the debtor to sell the subject parcel. The order provided that the sale proceeds would be used to pay the tax liens and first mortgage encumbering both parcels, with the balance of the proceeds to be applied to the arrearages due on the second mortgage. The sale was held and apparently the Dwoshes themselves purchased the property for $36,500.00.

The sale, however, did not resolve the tensions between the Dwoshes and the debtor. The hearings on confirmation became bogged down by various contentions between the parties. Nevertheless, the Dwoshes ultimately withdrew their objections to confirmation and an order of confirmation was entered on May 8, 1987.

The debtor's fifth amended plan, as confirmed, provides for payment in full with interest to all allowed unsecured claims. The five-year plan also provides that the pre-petition arrears due on the Dwosh mortgage will be paid in full with interest over the first twelve months of the plan. Once the arrears are paid the mortgage is to be reinstated.

According to the application for compensation filed by Dwoshes' attorneys, their counsel expended 40 hours over the period of February 19, 1986 through December 9, 1986. This total consists of 23.9 hours of partner time, 12.5 hours for associate time and 3.6 hours of paralegal time. The blended hourly rate calculates as $125.37 an hour.

The United States Trustee for the Southern District of New York, by its statement filed February 13, 1987, objects to that portion of the application for time spent on research. Although stating that an award of compensation "appears to be appropriate," the United States Trustee nevertheless concludes that the quantum of the award "should be in an amount less than the amount requested."

## DISCUSSION

By secured proof of claim dated May 7, 1986, the Dwoshes state that they are owed $39,964.51 "plus costs, disbursements, reasonable attorney's fees and interest." As to that component of their claim pertaining to attorney fees, the Dwoshes seek an award of $5,015.00 pursuant to Code Section 506(b). This section provides:

§ 506. Determination of secured status

(b) To the extent that an allowed secured claim is secured by property the value of which, after any recovery under subsection (c) of this section, is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs, or charges provided for under the agreement under which such claim arose.

Although the debtor does not dispute that the Dwoshes are oversecured within the meaning of Code Section 506(b), the debtor

objects to their claim for attorney fees on three grounds.

The first ground is that the underlying mortgage agreement does not provide for attorney fees for the type of litigation in which the Dwoshes engaged in the context of the Chapter 13 case. The mortgage, as signed by Mills on September 8, 1981, provides attorney fees to the Dwoshes as follows:

12. That if any action or proceeding be commenced (except an action to foreclose this mortgage or to collect the debt secured thereby), to which action or proceeding the mortgagee is made a party, or in which it becomes necessary to defend or uphold the lien of this mortgage, all sums paid by the mortgagee for the expense of any litigation to prosecute or defend the rights and lien created by this mortgage (including reasonable counsel fees), shall be paid by the mortgagor, together with interest thereon at the rate of six per cent per annum and any such sum and the interest thereon shall be a lien on said premises, prior to any right, or title to, interest in or claim upon said premises attaching or accruing subsequent to the lien of this mortgage, and shall be deemed to be secured by this mortgage. In any action or proceeding to foreclose this mortgage, or to recover or collect the debt secured thereby, the provisions of law respecting the recovering of costs, disbursements and allowances shall prevail unaffected by this covenant.

The debtor argues that the words "any action or proceeding" as used in this mortgage provision do not include litigation in a bankruptcy case. Alternately, she contends that even if this mortgage provision contemplates bankruptcy litigation, it must be the type of litigation that is strictly adversarial in nature, such as an adversary proceeding.

■ Code Section 506(b) allows the award of attorney fees to an oversecured creditor if, and only to the extent that, the security agreement in question "expressly" provides for such fees. *Matter of Elmwood Farm, Inc.*, 19 B.R. 338, 341 (Bankr.

S.D.N.Y.1982). In the absence of such provision, no attorney fee can be awarded. *In re Laza*, 69 B.R. 669, 671 (Bankr.E.D.N.Y. 1987).

■ The legislative history to Section 506(b) reflects a "Congressional desire to insure that the contractual expectations of secured creditors will not be ignored by bankruptcy courts when there is an excess of collateral securing their claims." *In re Carey*, 8 B.R. 1000, 1004 (Bankr.S.D.Calif. 1981). The law in New York recognizes the enforceability of contracts authorizing the payment of reasonable attorney fees, *see, e.g., Federal Land Bank v. Ambrosano*, 89 A.D.2d 730, 453 N.Y.S.2d 857 (1982), providing the legal services rendered are strictly within the terms of the contract. *See, e.g., City of Utica v. Gold Medal Packing Corp.*, 54 Misc.2d 721, 283 N.Y. S.2d 603 (Sup.Ct.1967), *mod. on other grounds*, 31 A.D.2d 730, 297 N.Y.S.2d 166 (4th Dep't 1968).

In our case, the controlling mortgage provision for attorney fees is broadly drafted. No intent, either express or implied, to limit its applicability to non-bankruptcy litigation is found in this provision.

A mortgage provision containing the same language as that appearing in paragraph 12 of the Mills-Dwosh mortgage was characterized as a "broadly worded obligation." *Matter of Nicfur-Cruz Realty Corp.*, 50 B.R. 162, 166 (Bankr.S.D.N.Y. 1985). The court concluded that the provision formed the "necessary predicate" to the awarding of attorney fees to a secured creditor in a Chapter 11 case. *Id.*

Other courts too have held that an express reference to "bankruptcy" is not a prerequisite to the award of attorney fees. *In re Nordmann*, 56 B.R. 634, 636 (Bankr. D.S.D.1986). For instance, the debtors in *Nordmann* similarly argued that their mortgage did not specifically provide for payment of attorney fees or costs incurred during the pendency of their Chapter 13 case. After noting that "[n]o legal authority was offered for this proposition," the court held that the agreement underlying the Section 506(b) claim for attorney fees need not specifically refer to bankruptcy

proceedings. *In re Nordmann,* 56 B.R. at 636–37. Even if the language in the underlying agreement is "general," such language is adequate to support the recovery of attorney fees pursuant to Section 506(b) in a Chapter 13 case. *Matter of Salisbury,* 58 B.R. 635, 639 (Bankr.D.Conn.1985); *In re Brunel,* 54 B.R. 462, 464 (Bankr.D.Colo. 1985).

Further, we can find no support for a restrictive interpretation of "action and proceeding" as used in paragraph 12 of the Mills-Dwosh mortgage. Although there are certain state court decisions limiting the meaning of this phrase to adversary proceedings, *City of Utica v. Gold Medal Packing Corp.,* 54 Misc.2d 721, 283 N.Y. S.2d 603 (Sup.Ct.1967), *mod. on other grounds,* 31 A.D.2d 730, 297 N.Y.S.2d 166 (4th Dep't 1968); *Engelsberg v. Cinderella Homes, Inc.,* 20 Misc.2d 1027, 192 N.Y.S.2d 317 (Sup.Ct.1959), these cases predate the enactment of the Bankruptcy Code and do not comport with federal case law as well as the federal bankruptcy rules. As one court observed, "It is axiomatic that federal law, not state laws, determines whether attorney's fees are allowable under 11 U.S.C. § 506(b)." *In re David N. Rausch, Inc.,* 41 B.R. 833, 834 (Bankr.D.S.D.1984).

In *Nicfur-Cruz,* for example, the court imposed no such restrictive interpretation on a fee provision analogous to paragraph 12 of the Mills-Dwosh mortgage. *Matter of Nicfur-Cruz Realty Corp.,* 50 B.R. 162 (Bankr.S.D.N.Y.1985). Additionally, FRBP 9002(1) defines "action" as either an "adversary proceeding or ... any other contested matter." This court accordingly finds that paragraph 12 of the Mills-Dwosh mortgage does cover legal services incurred post-petition even though not related to any adversary proceeding in the bankruptcy case.

Mills next argues that no award of attorney fees pursuant to Code Section 506(b) should be made since the Dwoshes were not "successful" in their bankruptcy litigation.

The "American Rule," the prevailing standard for attorney fee awards, requires each litigant to bear the cost of their own legal fees and expenses, absent a statute or contract to the contrary. *Ruckelshaus v. Sierra Club,* 463 U.S. 680, 103 S.Ct. 3274, 77 L.Ed.2d 938 (1983); *Summit Valley Industries, Inc. v. Local 112, United Brotherhood of Carpenters and Joiners,* 456 U.S. 717, 102 S.Ct. 2112, 72 L.Ed.2d 511 (1982); *Alyeska Pipeline Service Co. v. Wilderness Society,* 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975); *F.D. Rich Co. v. Industrial Lumber Co.,* 417 U.S. 116, 94 S.Ct. 2157, 40 L.Ed.2d 703 (1974); *Hall v. Cole,* 412 U.S. 1, 93 S.Ct. 1943, 36 L.Ed.2d 702 (1973). The Bankruptcy Code contains several of these statutory exceptions. Code Sections 303(i) and 523(d), for example, award attorney fees to a prevailing party under certain limited circumstances.

■ Section 506(b) presents another "narrow exception" to the "American Rule." *In re Colvin,* 57 B.R. 299, 301 (Bankr.D.Utah 1986). To substantiate a claim for attorney fees under this section, the creditor must only demonstrate that it is over-secured, that the underlying agreement provides for such fees and costs, and that the claim for fees and costs is reasonable. *In re Colvin,* 57 B.R. at 301; *In re Nordmann,* 56 B.R. at 636; *In re David N. Rausch, Inc.,* 41 B.R. at 834.

■ Success in bankruptcy litigation is not a prerequisite for an award of reasonable attorney fees to an oversecured creditor pursuant to Section 506(b). The court in *In re Brunel,* 54 B.R. 462 (Bankr.D.Colo. 1985), for example, noted that it "located no decision in which a creditor was denied fees [pursuant to Code Section 506(b) ] solely because the motion for relief from stay was unsuccessful." The court concluded that "there is considerable precedent for allowing attorney's fees ... even though the motion is unsuccessful or never ruled on." *Id.* at 465. Other courts have similarly not required the secured creditor seeking an award under Code Section 506(b) to establish that its litigation against the debtor was successful. *See, e.g., In re Minnesota Distillers, Inc.,* 45 B.R. 131 (Bankr.D.Minn.1984). The second ground of the debtor's objection to the Section

506(b) claim by the Dwoshes is accordingly rejected.

The debtor's third ground opposing the award of attorney fees to the Dwoshes concerns the issue of reasonableness. Code Section 506(b) only permits the award of *reasonable* costs to an oversecured creditor. "Reasonable" is defined in Black's Law Dictionary (Fifth Edition 1971) by the following:

Fair, proper, just, moderate, suitable under the circumstances. Fit and appropriate to the end in view. Having the faculty of reason; rational; governed by reason; under the influence of reason; agreeable to reason. Thinking, speaking, or acting according to the dictates of reason. Not immoderate or excessive, being synonymous with rational, honest, equitable, fair, suitable, moderate, tolerable.

■ The bankruptcy court has broad discretion in determining the amount of attorney fees for services performed in connection with bankruptcy proceedings. With respect to claims for attorneys fees under Section 506(b), the bankruptcy court has "inherent power" to review the reasonableness of such claims. 3 *Collier on Bankruptcy* ¶ 506.05 at 506–49 (15th ed. 1987). As one court explained:

In recognizing this special protection for secured creditors, it must be remembered that the Court possesses inherent discretion to review any award of fees under Section 506(b) for potential abuse of this right. In doing so, the Court would consider such factors as whether the attorneys fees and costs were incurred in an action reasonably calculated to protect the creditors' rights.

*In re Carey*, 8 B.R. at 1004.

■ The Dwoshes seek an award of $5,015.00 pursuant to Code Section 506(b). As noted earlier, their attorneys expended a total of 40 hours over the period of February 19, 1986 through December 9, 1986. The major substantive areas of litigation reflected in the attorneys' time log appear to be for services rendered to the Dwoshes in connection with the debtor's sale and closing of the unimproved parcel

of land and their objections to confirmation.

Paragraph 12 of the Mills-Dwosh mortgage expressly provides that the Dwoshes may recover attorney fees for actions or proceedings in which the "mortgagee is made a party, or in which it becomes necessary to defend or uphold the lien of this mortgage" and for "any litigation to prosecute or defend the rights and lien created by this mortgage...." The question thus presented is to what extent the legal services as described in the fee application are covered by paragraph 12 of the mortgage.

It appears that only attorney services rendered in connection with the sale and the confirmation are within paragraph 12 of the mortgage. The debtor sought to sell approximately half of the Dwoshes' collateral, with their lien to attach to the remaining parcel. A genuine dispute involving complex legal issues existed as to the propriety of this undertaking by the debtor and whether or not the rights of the Dwoshes under their mortgage were being adversely affected by the debtor's intended sale. As the sale and plan were integrally related, the Dwoshes were thus required to litigate their rights under the mortgage as to both.

■ The legal services in connection with the closing and consummation of the sale do not, however, appear to be provided for by paragraph 12 of the mortgage. They did not serve to protect or defend the rights or uphold the lien of the Dwoshes, and thus are beyond the scope of a claim under Section 506(b). Those services total three hours and are denied.

■ Code Section 506(b) requires the court to look not only to the underlying contract as the "initial focal point" but to examine that contract within the contours or "broader penumbra of bankruptcy law," because after bankruptcy "[c]ontracts do not exist in a vacuum." *In re Wonder Corp. of America*, 72 B.R. 580, 588 (Bankr. D.Conn.1987). As has been observed:

In permitting recovery of expenses covered by contract, "a rule of reason must be observed in order to avoid such

clauses becoming a tool for wasteful diversion of an estate at the hands of secured creditors, who, knowing that the estate must foot the bills, fail to exercise restraint in enforcement expenses."

*Matter of Salisbury,* 58 B.R. at 640 (quoting *In re Continental Vending Machine Corp.,* 543 F.2d 986, 994 (2d Cir.1976)).

We are generally satisfied with the sufficiency of the time log submitted documenting the legal services rendered. Based upon the court's observation of the conduct of litigation by Dwoshes' counsel, the services appear to have been performed in a professionally competent and efficient manner. This court, however, shares the view expressed by another bankruptcy court:

It is clear that creditors are entitled to engage counsel and pay for constant, comprehensive, and aggressive representation, but where services are not reasonably necessary or where action is taken because of an attorney's excessive caution or overzealous advocacy, courts have the right and duty, in the exercise of their discretion, to disallow fees and costs under § 506(b).

*In re Wonder Corp. of America,* 72 B.R. at 591.

For example, following the debtor's third attempt to sell the unimproved parcel, the Dwoshes gained little through their continued opposition to the debtor's intended sale and Chapter 13 plan. Ultimately, the property was sold under similar terms and for nearly the same amount as sought approximately seven months earlier. It appears that a major portion of the post-petition litigation by the Dwoshes had the effect of delaying rather than hastening the results achieved. "It is inherently unreasonable," as one court observed, "to ask a debtor to reimburse attorneys' fees incurred by a creditor that are not cost-justified either by the economics of the situation or necessary to preservation of the creditor's interest in light of the legal issues involved." *Matter of Nicfur-Cruz Realty Corp.,* 50 B.R. at 169.

In a Chapter 13 case, debtor rehabilitation and conservation of the estate are also important considerations. *In re Roberts,* 20 B.R. 914 (Bankr.E.D.N.Y.1982). In our case, Mills had to incur the additional expenses of retaining counsel and an appraiser largely as a result of the continued litigation between herself and the Dwoshes. Indeed, it is not clear which party was responsible for the extensive delay and expense created by the protracted litigation in this case. Rehabilitation inherently is a process of negotiation, of give and take. Hard lines once drawn are expensive to litigate to all concerned.

Accordingly, having given due regard to the actual hours expended and the hourly rates sought with reference to the legal issues pursued, the results achieved, the nature of the case and the difficulties encountered by the parties, and the underlying policies and principles of bankruptcy law, this court determines that $1,500.00 represents a fair and reasonable attorney fee under Section 506(b) to the Dwoshes.

## CONCLUSIONS OF LAW

1. This court has jurisdiction of these motions pursuant to 28 U.S.C. § 1334 and 28 U.S.C. § 157(a). This is a core proceeding as provided by 28 U.S.C. § 157(b)(2)(B).

2. The motion by the Dwoshes as supported by the application for allowance by their counsel seeking an award of attorney fees under 11 U.S.C. § 506(b) is granted in the amount of $1,500.00.

3. The objection filed by the debtor pursuant to FRBP 3007 seeking to disallow in part the proof of claim filed by the Dwoshes is granted to the extent that the Section 506(b) claim of the Dwoshes for attorney fees is reduced to $1,500.00.

An appropriate order shall enter in conformity herewith.