**In re WONDER CORPORATION OF AMERICA, Debtor.**

**CHASE MANHATTAN BANK, N.A., Appellant,**

v.

**WONDER CORPORATION OF AMERICA and Waldco, Inc., Appellees.**

**Civ. No. B–87–417 (TFGD).**

United States District Court, D. Connecticut.

Feb. 5, 1988.

---

Robert A. Izard, Jr., Janet C. Hall, Donald Lee Rome, Robinson & Cole, Hartford, Conn., for appellant.

Douglas A. Strauss, Pullman, Comley, Bradley & Reeve, Bridgeport, Conn., for appellees.

## MEMORANDUM OF DECISION

DALY, Chief Judge.

This is an appeal pursuant to 28 U.S.C. § 158 from the ruling of the United States Bankruptcy Court of this district. The parties have extensively briefed the issues and

the background of the appeal. However, despite the impressive size of the file in this case, the issues presented to this Court are relatively straightforward. The appellant, Chase Manhattan Bank ("Chase"), an oversecured creditor of the debtor-appellee Wonder Corporation ("Wonder"), challenges the bankruptcy judge's determination of attorney's fees and costs recoverable by the appellant under 11 U.S.C. § 506(b). For the reasons set forth below, the ruling of the bankruptcy court is AFFIRMED.

### BACKGROUND

On June 23, 1986, Wonder filed a petition under Chapter 7 of the Bankruptcy Code. The case was subsequently changed to one under Chapter 11. The bankruptcy court, after issuing a scheduling order setting a deadline for the filing of applications for administrative expenses under 11 U.S.C. § 503 and for attorney's fees and costs under 11 U.S.C. § 506(b), held hearings to resolve all such claims. Chase, along with others not party to this appeal, filed an application for attorney's fees and costs in accordance with prepetition agreements with Wonder.[1]

The bankruptcy court found that Chase is an oversecured creditor of Wonder with claims against Wonder of approximately $1.7 million. Moreover, it also found Chase enjoyed a substantial equity cushion. Nevertheless, according to the bankruptcy court's assessment,[2] the attorneys for Chase expended 1,290 hours on the case.

In total, Chase claimed fees and costs of $188,240.

After reviewing Chase's application, the bankruptcy court disallowed 515 of the hours claimed by Chase as "blatant and totally unproductive obstruction in the administration of this case...." *In Re Wonder Corp. of America,* 72 B.R. 580, 592 (Bankr.D.Conn.1987). Among the items for which time was disallowed, the bankruptcy court included the motion for relief from the automatic stay, opposition to administrative expenses of the Chapter 7 trustee, opposition to the withdrawal of Wonder's original attorney, services in connection with the disclosure statements and plans, an inter-bank letter of credit dispute, and an appeal from the court's scheduling order on § 503 and § 506(b) fees and expenses. The bankruptcy court noted that these actions served no legitimate purpose and reflected excessive duplication.

In addition, the bankruptcy court concluded that much of the remaining time claimed was the result of a concerted effort on the part of Chase and the other oversecured creditors to resist and obstruct Wonder's reorganization plan. In order to account for this and the unnecessary duplication reflected in Chase's claims, the bankruptcy court reduced the remaining hours by two-thirds. As a result, Chase was allowed 258 hours, which, at an hourly rate of $150, came to $38,700 in fees. The bankruptcy court also allowed $11,123 in costs, giving Chase a total claim under § 506(b) of $49,823.

---

1. The prepetition agreements between Wonder and Chase provided that Wonder would

 pay to the Bank all expenses (including expenses for legal services of every kind) of, or incidental to, the enforcement of any of the provisions hereof or of any actual or attempted sale, or any exchange, enforcement, collection, compromise or settlement of any Security or receipt of the proceeds thereof, and for the care of the Security and defending or asserting the rights and claims of the Bank in respect thereof, by litigation or otherwise, including expense of insurance; and all such expenses shall be indebtedness within the terms of this note.

 *In Re Wonder Corp. of America,* 72 B.R. 580, 586 (Bankr.D.Conn.1987).

2. Chase apparently failed to provide the bankruptcy court with a breakdown of its claimed fees and costs in its application. The bankruptcy court, compelled by its conclusion that "the exigencies of Wonder's attempt to reorganize require an expedited decision," attempted to extrapolate from Chase's deficient application information upon which to base its ruling rather than to require Chase to submit a renewed application. *Wonder Corp. of America,* 72 B.R. at 590. Moreover, it appears that Chase failed to comply in full with Local Bankruptcy Rule 20, which requires applications to be supported by documentation.

## DISCUSSION

Section 506(b) of the Bankruptcy Code allows a creditor with an oversecured claim against a debtor in bankruptcy to recover as part of its claim any reasonable attorney's fees and costs under the agreement between the creditor and the debtor under which the creditor's claim arose. 11 U.S.C. § 506(b). The principal thrust of Chase's appeal is that the bankruptcy court applied the wrong standard in determining the amount of recoverable fees and costs, and that state law governs the issue of reasonableness.

The Court of Appeals for the Second Circuit has yet to squarely address the issue of the standard under § 506(b), although several other circuits have. The Fourth, Fifth, and Ninth Circuits all have concluded after extensive inquiries into the legislative history of the provision that § 506(b) imposes the condition of reasonableness as a matter of federal law. *In Re Hudson Shipbuilders, Inc.*, 794 F.2d 1051, 1056–58 (5th Cir.1986); *Matter of 268 Ltd.*, 789 F.2d 674, 675–77 (9th Cir.1986); *Unsecured Creditors' Committee v. Walter Heller & Co. Southeast, Inc.*, 768 F.2d 580, 582–85 (4th Cir.1985). Therefore, under the interpretation of these three circuits, a claim for fees could be enforceable under state law yet be unreasonable under § 506(b) and federal law.

Chase maintains that, in this circuit, a different standard has been developed that applies state law to the issue of reasonableness. In support of its construction of the Second Circuit rule, Chase relies on *In Re Continental Vending Machine Corp.*, 543 F.2d 986 (2d Cir.1976); *In Re United Merchants and Manufacturers, Inc.*, 674 F.2d 134 (2d Cir.1982); and *Matter of Salisbury*, 58 B.R. 635 (Bankr.D.Conn.1985). A discussion of these cases will illustrate that the Second Circuit rule is not substantially different from the majority view of the standard on § 506(b).

*Continental Vending*, a case decided before the enactment of the present § 506(b),

involved a secured creditor's claim for attorney's fees under agreements between the creditor and the debtor. The court of appeals held that the validity and construction of the contract provision providing for fees was governed by state law. However, it also stated that "a rule of reason must be observed, in order to avoid such clauses becoming a tool for wasteful diversion of an estate at the hands of secured creditors who, knowing that the estate must foot the bills, fail to exercise restraint in enforcement expenses." 543 F.2d at 994. Accordingly, the court ruled that the creditor could recover only those fees that were reasonably necessary to preserve its interests. *Id.* Unlike *Continental Vending*, *United Merchants* involved the claims of an unsecured creditor for fees pursuant to a contractual agreement.[3] Nevertheless, relying in part on *Continental Vending*, the court of appeals again held that state law controlled the validity and construction of such contract provisions, and that an unsecured creditor could recover only those fees that the creditor reasonably believed to be necessary to protect its interest. 647 F.2d at 139–40. Finally, although the *Salisbury* court remarked that "state law will apply to determine reasonable fees," 58 B.R. at 640, it also nonetheless repeated the warning made first in *Continental Vending* of avoiding the wasteful diversion of the estate by allowing unreasonable fees. Moreover, it applied the standard that only fees reasonably believed to be necessary to the protection of the creditor's interest are recoverable. *Id.* *See also Matter of Lagasse*, 71 B.R. 551 (Bankr.D. Conn.1987).

■ The Court does not agree with Chase's construction of the standard elaborated in these cases. Chase confuses two distinct issues involved in the analysis of fees recoverable under § 506(b). The issue of the validity of the contractual provision allowing attorney's fees is not the same as the issue of reasonableness of the fees allowed. *See Matter of 268 Ltd.*, 789 F.2d

---

**3.** In fact, the court specifically noted that § 506(b) did not govern the case and shed no light on the resolution of the issue of the recovery of fees by an unsecured creditor. *United Merchants*, 674 F.2d at 138 & n. 6.

at 675–76. In fact, even Chase's discussion of these three cases belies its assertion that state law controls the issue of reasonableness. In each of these three cases, the court recognized that beyond the validity under state law of the fee provision of the prepetition agreement, it was required to take into consideration the reasonableness of the fees in terms of protecting the debtor's estate, which is a fundamental policy concern underlying the Bankruptcy Code. Because the reasonableness requirement is derived from the policy goals of the Bankruptcy Code, the Court can discern no way to read the "rule of reason" described in *Continental Vending* and followed in *United Merchants* and *Salisbury* as anything other than a matter of federal law.[4] *In Re Mills*, 77 B.R. 413, 418 (Bankr.S.D.N.Y.1987); *In Re B & W Management, Inc.*, 63 B.R. 395, 401 (Bankr.D.D.C.1986); *Matter of Nicfur–Cruz Realty Corp.*, 50 B.R. 162, 167 (Bankr.S.D.N.Y.1985).

Whether or not reasonableness is a matter of state or federal law, Chase argues that the Second Circuit standard for assessing reasonableness developed in *Continental Vending* and *United Merchants* is both subjective and prospective, and that the standard employed by the bankruptcy court was objective and retrospective. The distinctions drawn by Chase are without difference, and inaccurately describe the standard used by the bankruptcy court. Relying on *United Merchants*, Chase contends that under § 506(b) an oversecured creditor may obtain all fees and costs it reasonably believed to be necessary for the protection of its interests, which according to Chase is a subjective standard. Chase attempts to distinguish that standard from what it portrays as an objective one in *Continental Vending*, which held that services for which fees are claimed must have been "reasonably necessary." 543 F.2d at 994.

Even assuming that *United Merchants* applies to oversecured creditors under § 506(b),[5] the language to which Chase cites supports the standard that the bankruptcy court applied. The court in *United Merchants* directed that "[t]he controlling inquiry is whether, considering all relevant factors including duplication, the creditor reasonably believed that the services employed were necessary to protect his interests in the debtor's property." 674 F.2d at 140. The language used by the court of appeals is neither cryptic nor difficult to interpret. The standard in *United Merchants* is simply whether the belief that the fees were necessary was reasonable. It is subjective only in the sense that it refers to the reasonableness of the creditor's belief about the necessity of services rendered. Moreover, whether described as requiring fees that were reasonably necessary or fees that creditor reasonably believed to be necessary, the standard is essentially the same,[6] with particular attention given to the need to avoid the unnecessary erosion of the debtor's estate.

Chase's argument regarding whether the standard is prospective or not is similarly specious. Specifically, Chase contends that the standard requires that the court evaluate the reasonableness of the claimed fees from the viewpoint of when the services were undertaken. The determination of reasonable fees is by necessity to some degree done with hindsight because the application for fees is made at the completion of the case. The disposition of various motions can indeed be an indication, although not the sole factor, of the necessity

---

**4.** The parties do not appear to contest the validity or construction under state law of the provisions in the agreements between Wonder and Chase upon which Chase's claims are based. The Court need not decide therefore the issue of whether a fee provision that is invalid under state law would nevertheless be valid under § 506(b) and federal law. *See Unsecured Creditors' Committee*, 768 F.2d at 585 (holding that fee agreements are enforceable under § 506(b) notwithstanding state law to the contrary).

**5.** *United Merchants* involved an unsecured creditor and did not apply § 506(b). *See supra* note 3.

**6.** The court in *United Merchants* does not appear to have considered there to be any meaningful distinction between the two phrasings of the standard in that it relied on *Continental Vending* and specifically quoted the reasonably necessary language from that case. 674 F.2d at 140.

and reasonableness of the action taken. More importantly, inherent in the inquiry into reasonableness is a consideration of the necessity of the action from the perspective of the time at which it was taken. Beyond bald assertions, Chase has failed to show that the bankruptcy court did not take this consideration into account. In fact, the bankruptcy court's ruling reflects that its determination was, in Chase's word, prospective.

Chase also challenges the specific factors chosen by the bankruptcy court to assess the reasonableness of Chase's claims. The bankruptcy court cited nine factors that should be considered under § 506(b): (1) the legal services must be authorized by the loan agreement; (2) they must be necessary to the promotion of the client's interests; (3) they must be permitted under applicable law including the Bankruptcy Code; (4) they must be compatible with the policy underlying the Bankruptcy Code; (5) the time spent must be appropriate to the complexity of the task; (6) the hourly rate must be appropriate under applicable standards; (7) the tasks must have been assigned to fewest and least senior attorneys able to render the services in a competant and efficient manner; (8) the fee should be adjusted to reflect duplicative services rendered by attorneys representing other parties with a common interest in the case; and (9) the fee should be adjusted to reflect the court's observation of the nature of the case and the manner of its administration. *Wonder Corp. of America,* 72 B.R. at 588–89.

 Noting the similarity of these factors to those used in judging claims for administrative expenses under 11 U.S.C. § 303, Chase argues that the bankruptcy court confused the standard for fees under § 506(b) with that of § 303. Section 303 governs the allowance of fees provided for the benefit of the estate. The factors a court considers in determining reasonable fees under § 303 include the time, labor, and skill required, novelty and difficulty of

questions presented, results obtained, and the amounts of fees in similar cases. *See Matter of Kero–Sun, Inc.,* 59 B.R. 630, 633–34 (Bankr.D.Conn.1986); *In Re Cuisine Magazine, Inc.,* 61 B.R. 210 (Bankr.S.D.N.Y.1986). Because contractually based claims for fees are independent of fees allowed under § 303 of the Code, the factors used to determine reasonable fees under § 506(b) need not be the same as those for fees under § 303. *Salisbury,* 58 B.R. at 640. However, the use of some or even all of these factors is not improper as an indication of reasonableness under § 506(b). *See In Re LeMarquis Assoc.,* 65 B.R. 719, 722 (Bankr.E.D.Cal.1986) (as under § 303, bankruptcy court must closely scrutinize fee application under § 506(b) to assess whether services were necessary).

 The bankruptcy court's use of these nine factors did not reflect the application of a rigid test, but rather the factors served as guidelines as to what constituted reasonable fees under the circumstances. The nine factors in fact are simply an articulation of several quite straightforward principles underlying the requirements of § 506(b): The fees must be claimed pursuant to a contractual agreement; the time for which fees are claimed must have been spent prudently and efficently with an eye towards the overarching policy of avoiding the waste of the debtor's estate; *Continental Vending,* 543 F.2d at 994; *United Merchants,* 647 F.2d at 140; *Mills,* 77 B.R. at 419; and the court, relying on its accumulated expertise and familiarity with such matters, may evaluate the complexity of the case and the skill and efficiency with which it was handled. *Salisbury,* 58 B.R. at 640; *In Re Carey,* 8 B.R. 1000, 1004 (Bankr.S.D.Cal.1981); 3 *Collier on Bankruptcy* ¶ 506.05. The bankruptcy court's articulation of these factors as guidelines to determine a reasonable fee, against the backdrop of apparent duplication of services and attempted obstruction by Chase, was appropriate and useful to its determination.[7]

---

7. As to the seventh factor listed by the bankruptcy court, this Court cannot say that as a matter of law tasks must have been assigned to the

fewest and least senior attorneys possible. However, the underlying principle that counsel must attempt to spend its time in an efficient

Chase also argues that the bankruptcy court failed to follow the proper procedures in ruling on the fee application. Specifically, Chase claims that it was not given sufficient notice as to the objections to its fee application and that the bankruptcy court improperly relied on inadmissible evidence. These attacks on the bankruptcy court's determinations are meritless. Chase was offered an adequate opportunity to submit its application and to be heard on its claim, despite having submitted a deficient fee application. Whether or not the debtor timely objected to the fee application, the bankruptcy court was nevertheless required under § 506(b) to assess the reasonableness of the fees claimed. *B & W Management*, 63 B.R. at 401. The reliance by the bankruptcy court on the summary and evaluation of Chase's time sheets by the Estate Administrator was not improper.

Because it is for the most part in the best position to assess such questions, the bankruptcy court is granted a substantial degree of discretion in assessing the reasonableness of claimed fees and costs. *Mills*, 77 B.R. at 419–20; 3 *Collier on Bankruptcy* ¶ 506.05. Chase has not presented this Court with any adequate reason to disturb the bankruptcy court's determination in this case or to conclude that it abused its discretion. Quite the contrary, this Court finds that substantial evidence exists on the record to support the conclusion that a large portion of Chase's claim reflected unreasonably excessive duplication and a determined effort to frustrate the bankruptcy proceedings. The decision to disallow a significant portion of Chase's claim, therefore, was quite appropriate under the circumstances. *See LeMarquis Assoc.*, 65 B.R. at 723 (disallowance of claimed services because of large equity cushion); *In Re W.S. Sheppley & Co.*, 62 B.R. 279, 281 (Bankr.N.D.Iowa 1986) (reduction of fee claim based on un-

reasonable opposition of creditor to reorganization plan).

Accordingly, the ruling of the bankruptcy court is AFFIRMED.

---

manner and to avoid excessive representation and duplication is obviously central to the assessment of the reasonableness of the fees claimed. The bankruptcy court's reliance on its finding that an excessive number of lawyers were used to accomplish certain tasks and services were grossly duplicative was appropriate, well supported by the record, and required a reduction in the fee claim.