**In re Thomas M. CROWLEY, Debtor.**

No. 99–11572.

United States Bankruptcy Court.
D. Vermont.

May 7, 2003.

Robert F. O'Neill, Esq., Gravel and Shea, Burlington, VT, for Creditors/Movants.

Douglas J. Wolinsky, Esq., Eggleston & Cramer, Ltd., Burlington, VT, for Debtor.

*MEMORANDUM OF DECISION DE-TERMINING AMOUNT OF ATTOR-NEY'S FEES AND COSTS DUE TO MORTGAGOR*

COLLEEN A. BROWN, Bankruptcy Judge.

### I. ISSUE PRESENTED

The only open issue in this otherwise fully administered chapter 13 case is whether the mortgagees, Virginia O. Bickford, Thomas H. Ouelette and James E. Ouelette (collectively referred to as "the Lenders") are entitled to recover from the Debtor the attorneys fees and costs they incurred for legal services rendered post-confirmation, totaling approximately $15,000. Thomas M. Crowley (hereafter, "the Debtor") sold the property subject to the Lenders' mortgage on or about June 18, 2002; the proceeds of that sale were disbursed to the Lenders to the extent necessary to satisfy the undisputed portion of the mortgage debt and funds attributable to the subject attorneys fees have been held in escrow pending resolution of this dispute.

### II. JURISDICTION

The Court has jurisdiction over this contested matter pursuant to 28 U.S.C. §§ 157 and 1334.

### III. PROCEDURAL BACKGROUND

On October 23, 2002, the Debtor and Lenders filed a Stipulated Statement of Undisputed Facts (doc. # 63) (hereafter, "the Stipulation") which very concisely and thoroughly sets forth all material facts underlying the relationship between the parties, the administration of the chapter 13 case, the history of payments and payment defaults by the Debtor, and the basis for the Lenders' Motion for Attorneys' Fees and Costs (doc. # 64). Accordingly, the Court will not repeat all of the material facts.

The Lenders seek an award of their attorneys' fees and costs, as well as interest on all attorneys' fees and costs that are allowed. There are three critical stipulated facts which underlie the instant dispute. First, the parties agree that the crucial clause in the subject note, a $224,000 Promissory Note dated May 28, 1998 (hereinafter, "the Note"), provides:

Maker agrees to pay all costs for the collection of this Note, including reason-

able attorneys' fees, and to pay interest on all amounts not paid when due (pursuant to the terms hereof, by acceleration or otherwise), at the legal rate until such amounts are paid in full.

*See* Stipulation at ¶ 2; *see also* $224,000.00 Promissory Note (May 28, 1998), attached as Exhibit 1 to Stipulation. Flowing from this provision, the parties also agree that the Note entitles the Lenders to collect reasonable attorneys' fees and costs from the Debtor. *See* Creditors' Motion for Attorney's Fees at p. 8 (doc # 64); Debtor's Objection to Creditors' Motion for Attorney's Fees at p. 2 (doc. # 66). Lastly, the parties stipulate that the amount in controversy is $15,508 and is comprised of the following components:

| | |
|---|---|
| $ 557.79 | for interest on the late fees (of $3,330.70) paid at closing |
| $ 2,103.04 | for legal fees claimed for the drafting/negotiating of the Modification Agreement |
| $ 5,571.06 | for legal fees claimed for the researching/drafting/filing the § 362 Motion |
| $ 2,240.21 | for legal fees claimed for the Lenders' attempts to collect overdue payments |
| $ 2,149.75 | for legal fees claimed for the payoff of the Note upon the sale of the real property |
| $ 623.94 | for legal fees claimed for the collection of legal fees and costs |
| $ 2,262.24 | for interest on the legal fees claimed |
| $15,508.03 | TOTAL AMOUNT CLAIMED [1] |

*See* Stipulation at ¶¶ 25–32.

## IV. DISCUSSION

### A. Standard for the Award of Attorneys' Fees

The guiding principles for resolving this contested matter are found in §§ 506(b) and 330 of the Bankruptcy Code [2] which set forth a creditor's right to recover legal fees generally and the criteria for deter-

mining allowance of attorney's fees, respectively. Specifically, § 506(b) states:

(b) To the extent that an allowed secured claim is secured by property the value of which, after any recovery under subsection (c) of this section, is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs, or charges provided for under the agreement under which such claim arose.

The applicable language of § 330 is found in subsection (a)(3):

(3) In determining the amount of reasonable compensation to be awarded, the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including—

(A) the time spent on such services;

(B) the rates charged for such services;

(C) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;

(D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed; and

(E) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

*See also, e.g., In re Wonder Corp. of America,* 82 B.R. 186 (D.Conn.1988) ("Because

---

1. The Stipulation points out that this total "does not include continuing attorneys' fees" which, presumably, refers to attorneys' fees incurred after the closing on June 18, 2002. *See* Stipulation at ¶ 35 n. 1.

2. All statutory references herein are to Title 11 of the United States Code (hereinafter, the "Bankruptcy Code") unless otherwise indicated.

it is for the most part in the best position to assess such questions, the bankruptcy court is granted a substantial degree of discretion in assessing the reasonableness of claimed fees and costs.").

██ The time honored mechanism for evaluating the reasonableness of attorneys' fees is the "lodestar" approach which requires the court to determine the reasonable hourly rate for the services rendered and multiply that by the reasonable number of hours. required to complete the tasks at hand. *See Kelsey v. Great Lakes Higher Education Corp. (In re Kelsey),* 272 B.R. 830 (Bankr.D.Vt.2002); *In re S.T.N. Enterprises, Inc.,* 70 B.R. 823, 844 (Bankr.D.Vt.1987). After considering the entire record in this case, the time sheets detailing the services performed, the typical fees charged by other attorneys with similar levels of expertise for similar matters, and the level of complexity of this contested matter, the Court finds that the blended hourly rate of $148.52 proposed by the Lenders is reasonable. *See id.* ("As for the appropriate hourly rate, the Court is governed by the rates prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation.") (citing *Blum v. Stenson,* 465 U.S. 886, 896 n. 11, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984); *Algie v. RCA Global Communications, Inc.,* 891 F.Supp. 875, 894–95 (S.D.N.Y.1994)).

Having found the blended hourly rate to be reasonable, the Court will turn now to the process of assessing the reasonableness of the fees charged, in order to determine the Debtor's remaining obligation to the Lenders under the above-referenced Note.

### B. Consideration of the Specific Time Spent and Attorneys' Fees Incurred

██ When a bankruptcy court reviews an application for allowance of attorneys' fees, it starts with the premise that the applicant spent all of the time set forth on the time sheets in the manner alleged; it is not a question of whether the time was actually devoted to the professional services, but, rather, whether: (a) the time spent, and the corresponding fee incurred, were reasonable; and (b) whether it is equitable and appropriate for the debtor or estate to be obligated to pay that fee. *See generally In re Continental Vending Machine Corp.,* 543 F.2d 986, 994 (2d Cir.1976)(instructing that where an agreements between a secured creditor and debtor includes a clause allowing for reimbursement of attorneys' fees, "rule of reason must be observed, in order to avoid such clauses becoming a tool for wasteful diversion of an estate at the hands of secured creditors who, knowing the estate must foot the bill, fail to exercise restraint in enforcement expenses."). Thus, the court must apply the lodestar approach, guided by tenets of equity, taking into account the fact that it is the debtor or estate who will be required to pay the fee that is allowed.

██ The Court's determination can sometimes appear quite harsh, when, as in the case at bar, the applicant proceeded in good faith to provide services that it deemed to be in the best interest of its clients (here, the Lenders); the ultimate obligor (here, the Debtor) had no input as to the level or nature of services provided; and, the Court determines that allowance of the full fee would not be reasonable. The risk of this outcome is, however, unavoidable whenever counsel is providing professional services to one client which, contractually, are assessable against another party. The burden is always on the professional to exercise particularly careful billing judgment when formulating their strategy. *See, e.g., In re S.T.N. Enterprises, Inc.,* 70 B.R. at 842. Therefore,

when there is a contractual fee-shifting provision involved such that the party who is contractually obligated to pay the fee is someone different from (and often an adversary of) the applicant's client, it is incumbent upon the applicant to balance his or her professional obligation to represent the client zealously against the possibility that the party who will be charged the fee will only have to pay that amount which a court deems to be reasonable.[3] *See, e.g., In re Wonder Corp. of America,* 82 B.R. at 189, 192.

The Court will analyze the reasonableness of the fee application according to the time spent and fee charged for each of the five (5) categories of legal work jointly identified by the parties.

### (1.) *The Modification Agreement*

■ The Court finds that the task of drafting the subject Modification Agreement was straightforward and did not warrant either the expenditure of 13.8 hours of attorney time or a fee of $2,103. The Lenders were acting prudently in choosing to modify the Note in order to have it conform to the terms of the confirmed plan. However, as was ultimately demonstrated, that Modification Agreement needed only to: (1) specify the transaction between the parties, which required a three-paragraph description; (2) explain the reason for the modification; (3) disclose the new principal balance and monthly payment obligation; and (4) make clear that all other terms of the Note remain unchanged. The Lenders' attempts to incorporate other terms into the Modification Agreement were unwarranted and inconsistent with the Bankruptcy Code. *See generally In re Wonder Corp. of America,* 72 B.R. 580, 591 (Bankr.D.Conn.1987) ("[W]here services are not reasonably necessary or where action taken is because of an attorney's excessive caution or overzealous advocacy, courts have the right and duty, in the exercise of their discretion, to disallow fees and costs under § 506(b)."); *see also In re Mills,* 77 B.R. 413, 420 (Bankr.S.D.N.Y.1987) (" 'It is inherently unreasonable ... to ask a debtor to reimburse attorneys' fees incurred by a creditor that are not cost-justified whether by the economics of the situation or necessary to preservation of the creditor's interest in light of the legal issues involved.' ") (quoting *Matter of Nicfur–Cruz Realty Corp.,* 50 B.R. 162, 169 (Bankr.S.D.N.Y.1985)). Moreover, since Lenders' counsel has extensive experience handling commercial and banking matters, the Court finds it reasonable to presume a certain efficiency of performance. *See, e.g., In re Wonder Corp. of America,* 82 B.R. at 191 (instructing that it is appropriate for a court to consider whether the time for which fees are claimed were spent prudently and efficiently with an eye toward the overarching policy of avoiding the waste of the debtor's estate).

Therefore, in this case, where there was a confirmed chapter 13 plan which very clearly set forth the terms of the Debtor's modified repayment obligation, the Court finds that it is not reasonable to compensate Lenders' counsel for more than two

---

**3.** In that circumstance, the client may have already paid the professional the fee due for services rendered. Therefore, the application is actually seeking an order directing the debtor or estate to reimburse the client. If a bankruptcy court ultimately determines that the fee the applicant has charged does not meet the Bankruptcy Code's standard of reasonableness, the contractual obligor (*i.e.,* the debtor or estate) will be required to pay only that portion of the fee the bankruptcy court has found to be reasonable. Thus, the client will not be fully reimbursed for the fees paid, notwithstanding the contractual provision authorizing such fees to be imposed upon the debtor. Such is the situation in this proceeding.

(2) hours of time on the drafting of the Modification Agreement. However, recognizing that the Debtor and Lenders were in a highly adversarial posture during the drafting of the Modification Agreement, the Court further finds allowing an additional two (2) hours for the "negotiating" of the Modification Agreement to be reasonable. Thus, in this case, the Court finds four (4) hours devoted to the drafting and negotiation of the Modification Agreement to be quite reasonable.

Accordingly, the Court finds that a reasonable fee for the drafting and negotiating of the Modification Agreement is four (4) times $148.52 or $594.08.

### (2.) *The Motion for Relief from Stay*

 There is no question that the Debtor was frequently in default on his payment obligations to the Lenders. Likewise, there is no dispute that the Lenders have also been paid over $3,300 in late fees to compensate them for the financial loss they suffered as a result of the Debtor's tardiness. The question, then, is whether the Lenders are also entitled to collect $5,571.06 in attorneys' fees from the Debtor for their efforts in researching, preparing, filing and arguing their Motion for Relief from Stay (doc. # 29). The Lenders filed their Motion for Relief from Stay in September 2000, and that Motion, along with their Motion for Reargument, was denied by the Court. *See* Order Denying Motion for Relief from Stay and Denying Motion for Reargument (filed Dec. 11, 2000) (doc. # 42). The Lenders did not appeal that Order.

Unquestionably, the Note authorizes the Lenders to pursue their legal remedies, to attempt to collect their debt and to recover the reasonable costs of such collection from the Debtor. This Court must determine whether the 30.6 hours of time Lenders' counsel spent on the Motion for Relief from Stay can reasonably be assessed to the Debtor as "costs for the collection of this Note," under the contract between the parties. The Court will not consider the fact that the Motion was ultimately denied as a factor in this analysis, as to do so would be to unjustly apply a 20–20 hindsight test. *See, e.g., In re Mills,* 77 B.R. at 418 (noting that courts do not require a secured creditor seeking an award under § 506(b) to establish that its litigation against the debtor was successful). Rather, the Court will base its determination on how much time it believes "typical" sophisticated commercial counsel in Vermont would take to draft a "typical" lift stay motion in a confirmed chapter 13 case with a business debtor. *See In re Kelsey,* 272 B.R. at 834 ("The Court then decides how much time was reasonably spent on each task. 'In calculating the number of 'reasonable hours,' the court looks to its own familiarity with the case and its experience with the case and its experience generally as well as to the evidentiary submissions and arguments of the parties.'" *Clarke v. Frank,* 960 F.2d 1146, 1153 (2d Cir.1992) (further citations omitted)).

The Court is persuaded that the Lenders brought the Motion for Relief from Stay primarily to test a new legal theory, namely whether the then-recently decided *Frazer*[4] case could be applied retroactively. *See* Debtor's Objection at Part III.E. (doc. # 66). While the Lenders have every right to make a business judgment to attempt to make new law, this effort will not be compensated as legal services rendered to collect the sums due under the Note. *See In re Mills,* 77 B.R. 413, 420

---

4. *Merchants Bank v. Frazer,* 253 B.R. 513 (D.Vt.2000), *aff'd, Canney v. Merchants Bank v. (In re Frazer),* 284 F.3d 362 (2d Cir.2002).

(Bankr.S.D.N.Y.1987) (" 'It is inherently unreasonable ... to ask a debtor to reimburse attorneys' fees incurred by a creditor that are not cost-justified whether by the economics of the situation or necessary to preservation of the creditor's interest in light of the legal issues involved.'") (further citation omitted). Rather, the Court will award attorneys' fees based upon how much time the motion would have reasonably required if it had been a "garden variety" lift stay motion based upon a debtor's payment defaults—since that is what was presented here.

Accordingly, in light of the facts and circumstances of this proceeding, the Court will allow three (3) hours for the preparation of the § 362 motion and an additional two (2) hours for reviewing the opposition papers and appearing at the hearing on the motion. Therefore, the Court will allow $742.60 (which is computed by multiplying the number of hours allowed [5] by the allowed hourly rate [$148.52]).

### (3.) Collection of Overdue Payments

■ The Lenders seek reimbursement from the Debtor for the $2,241 of fees they incurred for the 20.6 hours their attorneys spent "attempting to collect overdue payments, interest, and late fees under the Note; including preparation of default letters, conferences with Crowley's attorney and the Bankruptcy Trustee, and assisting Movants with their attempt to collect under Note." See Creditors' Motion for Attorneys Fees and Costs at 7, ¶ 3 (doc. # 64). This rather vague catch-all description of services does not facilitate the Court's determination of the reasonableness of the fee award sought. See generally In re S.T.N. Enterprises, Inc., 70 B.R. at 834 ("We shall refuse compensation or reimbursement when the supporting records ... lack specificity."); In re Kelsey, 272 B.R. at 834. In particular, it is diffi-

cult to assess which, if any, of the services included in this category were actually necessary or reasonable. The time entries in this category seem to focus on the sending of default letters. The Court finds that it would have been reasonable for the Lenders's counsel to: (1) consult with their clients about if and when they should send default letters, and if and when counsel should initiate legal action; (2) consult with the chapter 13 trustee to ascertain if the Debtor was current on plan payments and try to coordinate the Lenders' strategy according to the trustee's position; and (3) attempt to negotiate a more satisfactory payment arrangement with Debtor's counsel. However, there is no articulation of how much time was spent on these latter types of tasks. Nor is it clear why attorneys were needed to draft every default letter. At least at some point, it would seem prudent for the attorneys to delegate this duty to their support staff or, even, their clients. See In re S.T.N. Enterprises, Inc., 70 B.R. at 842 ("Senior counsel has an obligation to delegate those tasks that require less expertise to junior associates or paralegals.").

According to the Stipulation, there were 27 late payments, see Stipulation at ¶ 14, and Lenders' counsel sent 12 default letters to Debtor's counsel, see Stipulation at ¶ 12. The Court notes that once the Debtor fell into arrears in February, 2001, he was consistently late with each monthly payment until the June 2002 closing. Once in default, the Debtor regularly made his Note payments about 30 days late. The Court finds Debtor's consistent tardy payment history significant in its analysis of the reasonableness of attorneys' fees because once the default fell into this pattern, it does not seem reasonable that counsel spent significant time drafting a default letter to the Debtor each month

until a decision was made to initiate legal action.[5]

The Court is unpersuaded that it was necessary to spend an additional 20–plus hours on overdue payment collection when the time sheets reflect that counsel had already spent nearly 14 hours on the Modification Agreement and over 30 hours on the Motion for Relief from Stay. Rather, after taking into account the time sheets filed by Lenders' counsel, the circumstances of the Debtor's continuing and chronic defaults herein, and the other legal action being undertaken, the Court finds it was not reasonable for the Lenders' counsel to have spent more than 11.50 hours, or an average of .5 hours per month, on the collection of overdue payments for the 23 months between May 1, 2000 and April 22, 2002.[6] Therefore, a fee of **$1,707.98** (11.50 hours times $148.52) for collection of overdue payments will be allowed as reasonable for this category of legal services rendered.

### (4.) *Payoff of the Note upon the Closing of the Sale of Real Property*

The Lenders seek $2,149.75 from Debtor to compensate them for the 12.7 hours of attorney time their counsel spent "in connection with the payoff of the Note upon the sale of the Pine Street property." *See* Stipulation at ¶ 29. The Court interprets this component of the legal fee to include ascertaining the exact closing date, computing the precise amount due, and collecting the payoff amount at the closing. Given the size and sophistication of Lenders' firm, it would seem that much, if not most, of the work in this category could have been performed by paralegal staff.

*See In re S.T.N. Enterprises, Inc.*, 70 B.R. at 842. Accordingly, the Court finds that the maximum reasonable amount of time for Lenders' counsel to have spent on this would have been 1.5 hours and, correspondingly, that a reasonable attorneys' fee for the services rendered in connection with the payoff figure is limited to **$222.78** (*i.e.*, 1.5 hours times $148.52 per hour).

### (5.) *Collection of Legal Fees and Costs*

It is well settled that counsel may be compensated for the time they spend collecting reasonable attorneys' fees and costs, provided the fee itself for such work is also reasonable. *See In re S.T.N. Enterprises, Inc.*, 70 B.R. at 839. Hence, once again, the essential determination is the reasonableness of the subject fees. The Lenders seek to collect $623.94 from the Debtor to reimburse them for the legal fees they paid to their counsel for the 3.5 hours their counsel spent through the beginning of October 2002, "to collect legal fees and costs under the Note." Lenders' counsel has made clear that this sum would be supplemented with whatever time and fees Lenders' counsel has expended since that time, which has not yet been specified, and which the Court must presume is significant based upon the number of documents filed after "the beginning of October."

It should be noted that the Modification Agreement increased the principal amount due on the Note by just over $50,000 (from $224,000 to $274,222) to account for prepetition costs, late fees, accrued interest and attorneys' fees. *See* Stipulation at ¶ 7.

---

5. All fees for the legal actions so initiated have already been addressed *supra*.

6. Paragraph 28 of the Stipulation states that these fees were incurred from May 1, 2000 through April 22, 2002, *i.e.*, a period of approximately 23 months, but the Creditors' Reply to Debtor's Opposition to Creditors' Motion for Attorneys' Fees and Costs, *see id.* at 4, ¶ C, refers to "a period of two years and three months" or 27 months. For purposes of this Decision, the Court will rely upon the Stipulation and presume a time span of 23 months.

Thus, at closing, when the Lenders were paid in full for the principal, interest and late fees under the modified Note, they received $50,000 for costs, interest, late fees and attorneys' fees. The Court recognizes it to be sound business judgment for the Lenders to attempt to collect the post-confirmation costs and attorneys' fees not paid at the closing, to the extent they are reasonable.

The amount spent to collect fees must bear a reasonable relationship to the amount sought to be collected. *See id.* The Court will award attorneys' fees in the amount of 10% of the debt to be collected as reasonable in the instant case; therefore, the Court finds it is reasonable for Lenders' counsel to spend $327 to collect attorneys' fees of $3,267.44.[7]

### C. Consideration of the Interest Sought

#### (1.) Interest on the Late Fees Paid at Closing

 Lenders seek $557.79 in interest on the late fees of $3,330.70 paid at closing. Lenders concede that the late fees were paid in full at the closing, *see* Stipulation at ¶ 25, and argue that they are entitled to interest on the late fees because of the clause in the Note that provides "the Maker must pay interest on all amounts not paid when due, at the legal rate." *See* Creditors' Motion for Attorneys' Fees and Costs at 5 (doc. # 64). Arguably, the term "amounts not paid" might well refer to a late fee if there were a due date for the late fee. However, a late fee, by definition does not have a due date; it is incurred because the due date of the underlying payment has been missed. *See generally*

BLACK'S LAW DICTIONARY 614 (6th ed.1990) (defining "fee" as "a charge or emolument or compensation for a particular act or service"). Moreover, the text of the Note does not provide a due date for late fees; the entire section on late charges in the Note consists of two sentences:

> In addition, if any payment owed hereunder shall not have been paid within ten(10) days of the due date thereof, Maker agrees to pay the holders a late charge equal to five percent (5%) of such payment. A late charge of five percent (5%) shall also apply to the balloon payment due on the Final Maturity Date if such payment is not paid within ten (10) days after the Final Maturity Date.

*See* Note at 1, attached at Exhibit 1 to Stipulation.

In the absence of a specific provision allowing for interest on late fees, *see, e.g., In re Tavern Motor Inn, Inc.,* 69 B.R. 138, 141 (Bankr.D.Vt.1986) (instructing that where creditor is oversecured and the subject charge is reasonable as a matter of state law, the court need only construe underlying agreement to determine if charge may be recovered, and finding that underlying agreement did not allow collection of late fee once note was accelerated), and the failure of Lender to specify any case law which would authorize such compensation for the delay in payment of late fees, the Court denies *in toto* the request for interest on the late fees paid at closing.

#### (2.) Interest on the Legal Fees Allowed Herein

 The Lender seeks interest in the amount of $ 2,262.24 as the interest due on the attorneys' fees sought to be awarded.

---

7. Three thousand two hundred sixty-seven and 44/100 dollars ($3,267.44) is the sum of: **$0.00** (for interest on the late fees paid at closing), **$594.08** (for legal fees claimed for the drafting/negotiating of the Modification Agreement). **$742.60** (for legal fees claimed for the researching/drafting/filing the § 362 Motion), **$1,707.98** (for legal fees claimed for the Lenders' attempts to collect overdue payments), and **$222.78** (for legal fees claimed for the payoff of the Note upon the sale of the real property).

Pursuant to the language of the Note requiring the Maker to pay all costs for the collection of the Note plus interest, at the legal rate, on all amounts not paid when due, it is clear that the Lender is entitled to this interest. *See* Note at 1, attached as Exhibit 1 to Stipulation.

Accordingly, the Court will allow interest at the legal rate of 12% on the attorneys' fees allowed (which the Court has determined to be $3,594.44) for a period of 323 days (from June 18, 2002, the closing date, through May 7, 2003, the date of this decision) for a total of **$387.00.** (See calculation below.)

### V. CONCLUSION

For the reasons set forth above, the Court finds that a reasonable allowance of attorneys' fees and costs herein is limited to:

| | | |
|---|---:|---|
| | $ 0.00 | for interest on the late fees (of $3,330.70) paid at closing |
| | $ 594.08 | for legal fees claimed for the drafting/negotiating of the Modification Agreement |
| | $ 742.60 | for legal fees claimed for the researching/drafting/filing the § 362 Motion |
| | $ 1,707.98 | for legal fees claimed for the Lenders' attempts to collect overdue payments |
| | $ 222.78 | for legal fees claimed for the payoff of the Note upon the sale of the real property |
| | $ 327.00 | for legal fees claimed for the collection of legal fees and costs |
| | $ 3,594.44 | **Subtotal** |
| *plus* | $ 387.00 | for interest on the legal fees allowed (Subtotal at 12% for 323 days) |
| | $ 3,981.44 | **TOTAL AMOUNT DUE TO LENDERS FROM FUNDS IN ESCROW** |

Accordingly, $ **3,981.44** shall be paid to Lenders and the balance of the $14,430.92 being held in escrow ( *i.e.*, $10,449.48) shall be immediately released to the Debtor.

This Memorandum of Decision constitutes the Court's findings of fact and conclusions of law.