**In the Matter of David L. SALISBURY, Helen F. Gach, Debtors.**

**Bankruptcy Nos. 2–84–00326, 2–84–00327.**

United States Bankruptcy Court, D. Connecticut.

Aug. 21, 1985.

Richard M. Leibert, Hartford, Conn., for debtors.

Joel M. Grafstein, East Hartford, Conn., for creditor, FinanceAmerica Mortg. Service, Inc.

## MEMORANDUM OF DECISION AND ORDER

ROBERT L. KRECHEVSKY, Bankruptcy Judge.

### I.

### A.

The matter before the court arises from an objection filed by David L. Salisbury and Helen F. Gach, allegedly solvent debtors in consolidated chapter 13 cases, to a secured claim of FinanceAmerica Mortgage Service, Inc. (FinanceAmerica). When the objection came on for hearing on April 30, 1985, the

parties introduced no evidence and agreed to present the issues to the court by way of briefs. The parties have not agreed upon a stipulation of facts, and in their memoranda each has adverted to documents filed in the cases and to testimony presented during hearings on motions of FinanceAmerica for relief from stay. FinanceAmerica filed these motions on June 11, 1984, and hearings thereon were scheduled sporadically up to July 17, 1985, when the parties requested the motions go off the trial calendar until the present matter is resolved.

The debtors object to FinanceAmerica's claim that it is entitled to add the attorney fees it incurred in these bankruptcy proceedings to its debt. The following factual background has been culled from the sources referred to in the preceding paragraph and the petitions, schedules and motions as on file.

### B.

The debtors, on October 17, 1978 executed a promissory note, apparently in the amount of $11,069.69, in favor of FinanceAmerica secured by a third mortgage on the debtors' residence located on Hinman Road, Watertown, Connecticut. On March 17, 1981, FinanceAmerica, after default, commenced an action to foreclose the mortgage. The state court rendered a judgment of strict foreclosure on October 19, 1982. The state court thereafter entered several amended judgments of strict foreclosure,[1] the latest of which is dated August 22, 1983. That judgment, by stipulation of the debtors and FinanceAmerica, set May 1, 1984 as the last day for the debtors to redeem the property, and determined the debt due FinanceAmerica from the debtors to be $15,506.38, which amount included an attorney's fee of $2,750.00. The court also adjudged that FinanceAmerica was due a $250.00 appraisal fee, a $75.00 title search fee and $257.40 in other costs. For redemption purposes the judgment ordered interest on all sums payable

---

1. Helen F. Gach filed a chapter 13 petition on October 19, 1982, which stayed the mortgage

foreclosure action until the petition was dismissed.

at the rate of 8% per annum from August 22, 1983.

The debtors filed individual chapter 13 petitions on April 30, 1984, one day before the stipulated-to law day. They neither filed schedules with their petitions nor appeared at the meetings of creditors set by the court for May 21, 1984. FinanceAmerica thereupon filed motions to dismiss or convert the cases. The debtors submitted their schedules on June 12, 1984, and their chapter 13 plans on June 18, 1984, as a result of which the FinanceAmerica motions to dismiss or convert were not pressed.

On June 11, 1984, FinanceAmerica filed motions for relief from stay in both debtor cases, alleging that the debtors had no equity in the property on which FinanceAmerica held its mortgage and that the property was not necessary to any reorganization. At the request of the debtors, the court entered an order substantively and administratively consolidating their cases. The debtors filed a modified chapter 13 plan on November 7, 1984, on which a confirmation hearing has not yet been concluded. Hearings on the relief from stay motions were held on November 7, 1984 and December 5, 1984, when the parties offered testimony through expert appraisers as to the value of the property. The debtors' appraiser set the value at $75,000.00, and the FinanceAmerica appraiser valued the property at $53,500.00. At the December 5, 1984 hearing, a United States attorney (Internal Revenue Service) appeared and participated in the hearing, based upon a claim of unpaid taxes.

FinanceAmerica filed its original claim as a secured creditor in the amount of $17,135.98 on May 11, 1984. The amount of the claim was calculated upon the state court judgment with interest computed to May 11, 1984 at 8% per annum. On February 22, 1985, FinanceAmerica filed an amended proof of claim in the amount of $21,449.02. The basis for the increase in the amended claim, besides the accrual of interest, was the addition of legal fees amounting to $4,060.00 incurred by Finan-

ceAmerica during the bankruptcy proceeding. FinanceAmerica attached to its proof of claim an itemized schedule of 40.6 hours of attorney services covering the period from May 31, 1984 to January 18, 1985.

The significant issues raised by the parties' briefs are two-fold—(1) whether FinanceAmerica is entitled to add the attorney's fee it incurred during this bankruptcy case to its debt, and (2) if so entitled, whether the claimed fee of $4,060.00 is reasonable.

## II.

### A.

Section 506 of the Bankruptcy Code provides in pertinent part:

> *§ 506. Determination of secured status.*
>
> .  .  .  .  .
>
> (b) To the extent that an allowed secured claim is secured by property the value of which, after any recovery under subsection (c) of this section, is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs, or charges provided for under the agreement under which such claim arose.
>
> (c) The trustee may recover from property securing an allowed secured claim the reasonable, necessary costs and expenses of preserving, or disposing of, such property to the extent of any benefit to the holder of such claim.

According to its legislative history, § 506(b) codifies pre-Code law that an oversecured creditor can assert, as part of its secured claim, its right to interest, fees and costs arising under its credit agreement. *See* S.Rep. No. 95–989, 95th Cong., 2d Sess. 68 (1978); H.Rep. No. 95–595, 95th Cong., 1st Sess. 356–357, U.S.Code Cong. & Admin.News 1978, p. 5787. The parties are agreed, that for the purposes of this proceeding, the value of the property on which FinanceAmerica has its lien is greater than FinanceAmerica's claim, and that FinanceAmerica is an oversecured creditor.

The original mortgage note executed by the debtors in favor of FinanceAmerica contains the following covenant concerning costs of collection: "In the event of default, Borrowers agree to pay reasonable attorney fees and reasonable foreclosure costs as set by court." Connecticut law is clear that provisions for attorneys' fees contained in documents are enforceable. Conn.Gen.Stat. § 49–7 states:

> Any agreement contained in a bill, note, trade acceptance or other evidence of indebtedness, whether negotiable or not, or in any mortgage, to pay costs, expenses or attorneys' fees, or any of them, incurred by the holder of such evidence of indebtedness or mortgage, in any proceeding for collection of the debt, or in any foreclosure of such mortgage, or in protecting or sustaining the lien of such mortgage, shall be valid, but shall be construed as an agreement for fair compensation rather than as a penalty, and the court may determine the amounts to be allowed for such expenses and attorneys' fees, even though such agreement may specify a larger sum.

### B.

■ The debtors' initial argument is that the provisions of § 506(b) are not operative unless there has been a sale of the property under § 506(c). The debtors rely on the clause contained in § 506(b) which reads, "after any recovery under subsection (c) of this section." There has been no property sale in this proceeding. The debtors' contention is derived from the holding in *Burns v. Home Fidelity Savings & Loan Association (In re Burns)*, 16 B.R. 757 (Bankr.M.D.Ga.1982). *Burns*, however, results from an obvious misreading of § 506(b), no other court has followed it, and neither will I. *See* 3 *Collier on Bankruptcy* ¶ 506.05, n. 3 (15th ed. 1985).

### C.

■ The debtors next argue that the legal-fee obligation contained in the note was eliminated by reason of the state-court foreclosure merging the note into the court judgment. They assert that their proposed plan does not seek to deaccelerate the mortgage foreclosure, but to pay off the judgment over the five-year term of the plan. In *City Savings Bank of Bridgeport v. Miko*, 1 Conn.App. 30, 467 A.2d 929 (1983), a defendant argued that in a deficiency judgment proceeding after strict foreclosure, the attorneys' fee provision in a note would be inapplicable.[2] The Connecticut Appellate Court rejected that argument and ruled that:

> General Statutes § 49–7 validates any agreement as to attorneys' fees in 'any proceeding for the collection of the debt, or in any foreclosure of the mortgage....' It is clear that attorneys' fees for such a proceeding are merely a continuation of the collection process whether it be deemed a proceeding for the collection of the debt or part of the foreclosure of the mortgage or both, as the case here.

*Id.* at 36–37, 467 A.2d 929. The appellate court did not disapprove of the trial court's alternate holding that notwithstanding a claim of merger of the note into the judgment, "the parties contemplated, and the plaintiffs intended, that the obligation concerning attorneys' fees continue until the debt was completely collected, and, therefore, the obligation could extend beyond the judgment date." *Id.* at 37, n. 3, 467 A.2d 929. I conclude that the FinanceAmerica attorneys' fee provision survived the state court foreclosure proceeding when FinanceAmerica required legal services in the bankruptcy court to protect its debt. *See also* Section D, *infra*.

### D.

■ The debtors say that the language of the attorneys' fee provision in the FinanceAmerica note is limiting and should not be construed to cover costs incurred in a

2. The provision stated that the payors agreed to pay "reasonable attorneys' fees incurred in the

collection of any sum due hereunder."

bankruptcy proceeding. In *United Merchants and Manufacturers, Inc. v. The Equitable Life Assurance Society of the United States (In re United Merchants and Manufacturers, Inc.)*, 674 F.2d 134 (2d Cir.1982), a loan document contained, as here, general language concerning attorneys' fees:

> [The debtor] covenants that, if it shall default in the making of any payment due under the note, it will pay to the holders hereof such further amounts to the extent lawful as shall be sufficient to pay the costs and expenses of collection, including reasonable attorneys' fees.

Pursuant to that provision, an unsecured creditor filed a claim in the bankruptcy court for expenses incurred in protecting its interest in the bankruptcy estate. The court of appeals held the language sufficient to support such costs if "the creditor reasonably believes that the services employed were necessary to protect his interest in the debtor's property." *Id.* at p. 140. *See also Talcott v. Wharton (In re Continental Vending Machine Corp.)*, 543 F.2d 986 (2d Cir.1976) (same). In *Mechanics Savings Bank v. Tucker*, 178 Conn. 640, 648, 425 A.2d 124 (1979), an attorneys' fee provision was held to include legal expenses which a mortgagee incurred in participating in three bankruptcy proceedings under chapter XII of the Bankruptcy Act of 1898. The court said:

> Although Chapter XII proceedings under the federal Bankruptcy Act do not impinge directly on valid security interests,

we are not prepared to say that such proceedings are necessarily so remote from the interests of a mortgagee that a person in the position of the defendant, after default, can without an evidentiary showing whatsoever avoid responsibility for fees and costs actually incurred.

*See Longwell v. Banco Mortgage Co.*, 38 B.R. 709, 711 (N.D.Ohio 1984) (An award of attorneys' fees incurred in state court foreclosure proceedings and in chapter 13 bankruptcy proceedings allowable an oversecured creditor); *In re Calzaretta*, 35 B.R. 92, 94 (Bankr.N.D.Ill.1983) (An oversecured creditor entitled to attorneys' fees under § 506(b) for work done after filing of a chapter 13 plan); *Old Kent Bank and Trust Company v. Marino (In re Marino)*, 23 B.R. 321, 323 (Bankr.W.D.Mich.1982) (same). The covenant providing for attorneys' fees in the FinanceAmerica note is adequate to support recovery of attorneys' fees incurred in the bankruptcy court.

### E.

There is a question as to the standard to apply in determining the reasonableness of counsel fees. Both FinanceAmerica and the debtors have analyzed this question as if the fees were being sought under § 330 of the Bankruptcy Code which deals with compensation for officers of the estate.[3] The parties have extensively discussed the application of the twelve factors described in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir.1974).[4]

---

**3.** *§ 330. Compensation of officers.*
(a) After notice and a hearing, and subject to sections 326, 328, and 329 of this title, the court may award to a trustee, to an examiner, to a professional person employed under section 327 or 1103 of this title, or to the debtor's attorney—
(1) reasonable compensation for actual, necessary services rendered by such trustee, examiner, professional person, or attorney, as the case may be, and by any para-professional persons employed by such trustee, professional person, or attorney, as the case may be, based on the nature, the extent, and the value of such services, the time spent on such services, and the cost of comparable services other than in a case under this title; and
(2) reimbursement for actual, necessary expenses.

**4.** *Johnson* set standards for awarding attorney fees in civil right actions. These standards, which have been applied as well in other fee-shifting cases, and in some jurisdictions in bankruptcy cases, are as follows:

> (1) The time and labor required; (2) The novelty and difficulty of the questions; (3) The skill requisite to perform the legal services properly; (4) The preclusion of other employment by the attorney due to acceptance of the case; (5) The customary fee; (6) Whether the fee is fixed or contingent; (7) Time limitations imposed by the client or other circumstances; (8) The amount involved and the results obtained; (9) The experience, reputation, and ability of the attorneys; (10) The "undesirability" of the case; (11) The nature

It appears in this circuit, however, that the factors involved in a § 330 determination need not be the identical factors used by a court in deciding reasonable fees under § 506(b). As emphasized by the *United Merchants* court, "claims for collection costs are based in contract and are independent of statutory compensable administrative expenses for services rendered to the estate.... Collection costs claims ... are not subject to the statutory limitations on reimbursement for expenses of administering the estate." 674 F.2d at 138–139. Furthermore, the court indicated in such cases state law will apply to determine reasonable fees. 674 F.2d at 139. *Accord Vogel v. Triangle Equipment Co., Inc. (In re Triangle Equipment Co., Inc.),* 26 B.R. 175, 177, (W.D.Va.1982) ("The award of attorney's fees in a bankruptcy proceeding under a private agreement is a question of 'the extent and nature of property rights' which is to be determined in accordance with state rather than federal common law."). The court, in *United Merchants,* went on to repeat a warning first made in *In re Continental Vending Machine Corp., supra.* In permitting recovery of expenses covered by contract, "a rule of reason must be observed in order to avoid such clauses becoming a tool for wasteful diversion of an estate at the hands of secured creditors, who, knowing that the estate must foot the bills, fail to exercise restraint in enforcement expenses." 674 F.2d at 139. The *United Merchants* court concluded: "The controlling inquiry is whether, considering all relevant factors including duplication, the creditor reasonably believed that the services employed were necessary to protect his interests in the debtor's property." 674 F.2d at 140.

The latest Connecticut Supreme Court holding which deals with a contractual clause authorizing recovery of a reasonable attorney's fee focuses on the trial courts' "general knowledge of what has occurred at the proceedings before them to supply evidence in support of an award of attorney's fees." *Bizzoco v. Chinitz,* 193 Conn.

and length of the professional relationship

304, 310, 476 A.2d 572 (1984). The court singled out the complexity of the issues and the skill of counsel in dealing with those issues as factors for consideration. *Id.* at 311, 476 A.2d 572. *See also Appliances Inc. v. Yost,* 186 Conn. 673, 443 A.2d 486 (1982) (Trial court may rely on itemization of counsel services, time spent, and court's own general knowledge to determine reasonable attorney fees.) The Connecticut Supreme Court, as a test for reasonableness, has referred to Conn. Gen. Stat. § 42–150aa. That statute limits attorney's fees in consumer contract actions to 15 percent of the amount of the judgment. *Piantedosi v. Floridia,* 186 Conn. 275, 279–280, 440 A.2d 977 (1982). ("The statute reflects a legislative standard of reasonableness which the present award does not exceed.")

From the foregoing, I find that under Connecticut state law concepts, reasonableness in fees not only will subsume my knowledge of the proceedings held before me, including the complexity of issues, competence of counsel, and time spent, but also requires that I take into account the size of the creditor's original claim.

### F.

FinanceAmerica has already been allowed an attorney's fee of $2,750.00 in state court on a judgment of $12,756.38. In the bankruptcy court it has filed, for cause, a motion to dismiss the cases and motions for relief from stay. These latter motions required portions of two days for trial. With the factors described in the preceding section in mind, I conclude that an award of $1,500.00 for an attorney's fee is reasonable and just.

### III.

The objection to the claim of FinanceAmerica filed by the debtors is sustained as to the attorney's fee listed for any sum in excess of $1,500.00. It is

SO ORDERED.

with the client; (12) Awards in similar cases.