**In re Lauren Jo CHASE, Debtor.**

**Jan M. Sensenich et al., Plaintiffs,**

**v.**

**Robert Molleur, Defendant.**

**Bankruptcy No. 02–10582.
Adversary No. 03–1058.**

United States Bankruptcy Court.
D. Vermont.

Aug. 2, 2005.

Jan M. Sensenich, Esq., Chapter 13 Trustee, White River Junction, VT, for the Plaintiffs.

Oliver Twombley, Esq., Law Office of Oliver Twombley, P.C., Barre, VT, for the Defendant.

### *MEMORANDUM OF DECISION DETERMINING THERE WAS NOT REASONABLY EQUIVALENT VALUE FOR THE STRICT FORECLOSURE TRANSFER*

COLLEEN A. BROWN, Bankruptcy Judge.

The Plaintiffs seek to avoid the transfer of a dwelling located in West Danville, Vermont (the "Subject Property"), effected pursuant to the Vermont strict foreclosure process, as a fraudulent conveyance under § 548[1] and 9 V.S.A. § 2289(a). This Court has determined as a matter of law that compliance with the Vermont strict foreclosure process does not create a presumption of "reasonably equivalent value" and that a transfer effectuated under the strict foreclosure process may be avoided if a court determines the consideration for the transfer in question was for less than reasonably equivalent value. *Sensenich, et al. v. Molleu (In re Chase)*, 2005 WL 189711, *6 (Bankr.Vt., January 27, 2005) (doc. # 35). Based upon the evidence presented during a trial on this matter, the Court has found that the Subject Property had a value of $151,200, and that the outstanding debt was $110,927.64 [as of October 26, 2001 (the "Transfer Date") ]. *In re Chase*, 2005 WL 280436, *2 (Bankr.Vt., February 3, 2005) (doc. # 42). Currently pending before this Court are the Parties' submissions as to whether the consideration for the transfer of the Subject Property was reasonably equivalent value. The Trustee has moved under the state statute for a monetary judgment in the amount of the difference between the outstanding debt and the fair market value of the Subject Property as of the Transfer Date. *See* 9 V.S.A. § 2292.

### *JURISDICTION*

The Court has jurisdiction over this proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(H) and 1334.

### *DISCUSSION*

**A. Historical Interpretation and importance of "Reasonably Equivalent Value"**

 Section 548 sets forth the powers of a trustee in bankruptcy to avoid fraudulent transfers.[2] It permits the trustee to set aside transfers that are tainted with actual fraud and certain other transfers, commonly referred to as constructively fraudulent transfers. *BFP v. Resolution Trust Corp.*, 511 U.S. 531, 535, 114 S.Ct. 1757, 128 L.Ed.2d 556 (1994), *reh'g denied*, 512 U.S. 1247, 114 S.Ct. 2771, 129 L.Ed.2d 884. Section 548 permits avoidance if the trustee can establish (1) that the debtor

---

1. Unless otherwise indicated, all statutory references herein are to Title 11 U.S.C., the United States Bankruptcy Code.

2. In a chapter 11 context, these powers are also available to the debtor in possession pursuant to § 1107(a).

had an interest in property; (2) that a transfer of that interest occurred within one year of the filing of the bankruptcy petition; (3) that the debtor was insolvent at the time of the transfer or became insolvent as a result of the transfer; and (4) that the debtor received "less than a reasonably equivalent value" in exchange for such transfer. *Id.;* 11 U.S.C. § 548(a)(1)(B). Under § 544, the trustee may also rely on state fraudulent conveyance statutes. The elements of the Vermont fraudulent conveyance statute, 9 VSA §§ 2288 and 2289, are identical to § 548; the state provision allows the Trustee to obtain a monetary judgment for the difference between the debt and the value of the property as an alternative to the order avoiding the transfer authorized by the federal statute. *Compare* 9 V.S.A. § 2292 to 11 U.S.C. § 548.

The Bankruptcy Code does not define "reasonably equivalent value" and prior to the Supreme Court's decision in *BFP,* courts applied various approaches in determining whether a debtor received reasonably equivalent value in transfers made through a state's foreclosure sale process. Although this Court has found the Supreme Court's holding in *BFP* to be inapplicable to Vermont's strict foreclosure process, the Court finds the various principles discussed therein to be instructive in its determination of how to measure whether a debtor received reasonably equivalent value in a system that does not afford the procedural protections of a sale process.

In *Durrett v. Washington Nat. Ins. Co.,* 621 F.2d 201 (1980), the Fifth Circuit, in its interpretation of a similar provision under the Bankruptcy Act, held that the debtor in possession could avoid a foreclosure sale that yielded 57 percent of the property's fair market value and stated in dicta that it had been unable to locate a decision of any court that found a transfer for less than 70 percent of the fair market value of the property to constitute reasonably equivalent value. *Id.* at 203. The *Durrett* opinion has been construed by many to establish a fixed minimum percentage mark (the "Durrett rule") which was applied in other cases under the Bankruptcy Code. *In re Littleton,* 888 F.2d 90, 92, n. 5 (11th Cir.1989) (noting courts have applied court's reasoning in *Durrett* to § 548 cases); *Abramson v. Lakewood Bank and Trust Co.,* 647 F.2d 547 (5th Cir.1981), *cert. denied,* 454 U.S. 1164, 102 S.Ct. 1038, 71 L.Ed.2d 320 (1982) (relying upon *Durrett* to determine whether nonjudicial foreclosure sale constituted "transfer" within meaning of Act); *B.F.P. v. Imperial Sav. & Loan Ass'n (In re B.F.P.),* 974 F.2d 1144, 1148 n. 4 (9th Cir.1992) ("The 'Durrett rule' holds that so long as the debtor received at least 70 percent of fair market value, the sale cannot be avoided under Section 548...."); *Gillman v. Preston Family Inv. Co. (In re Richardson),* 23 B.R. 434–48 (Bankr. D.Utah 1982) (noting that dicta in *Durrett* has been interpreted to require 70 percent of fair market value to constitute reasonably equivalent value, discussing cases that did not follow *Durrett,* and concluding reasonable equivalence depends on the facts of each case). The Durrett rule articulates an objective and absolute rule for determining whether reasonably equivalent value was given.

In *In re Madrid,* the Ninth Circuit rejected the Durrett rule and held that consideration received at a noncollusive, regularly conducted foreclosure sale is, as a matter of law, reasonably equivalent value for purposes of § 548. *In re Madrid,* 21 B.R. 424 (9th Cir. BAP 1982), *aff'd on other grounds,* 725 F.2d 1197 (9th Cir.), *cert. denied,* 469 U.S. 833, 105 S.Ct. 125, 83 L.Ed.2d 66, (1984); *see also In re Winshall Settlor's Trust,* 758 F.2d 1136, 1139 (6th Cir.1985). Applying this holding to

the facts before it, the *Madrid* court upheld a foreclosure sale where the debtor received between 64 and 67 percent of the market value for the property at the time of sale, where all of the procedural requirements for the foreclosure sale had been satisfied. The *Madrid* court opined, "[h]owever valid it may be to hold that less than 70 percent of fair market value is not a fair equivalent for a private transfer to an insider, application of that standard to regularly conducted public sales is questionable." *Id.* at 426. The *Madrid* court was concerned that the Durrett rule would radically alter state foreclosure law under which the mere inadequacy of price is usually insufficient to upset a foreclosure sale. *Id.* at 427.

The Seventh Circuit described the *Madrid* approach as effectively creating a judicial exception to the trustee's avoiding powers under § 548. *In re Bundles*, 856 F.2d 815, 823 (7th Cir.1988). The *Bundles* court also observed that:

> [A]n irrebuttable presumption has the effect of reading good faith into section 548[ (a)(1)(B) ]; as long as the sale is conducted in good faith and in accordance with state law, the sale price is conclusively presumed to be a reasonably equivalent value. This result is inconsistent with section 548[ (a)(1)(B) ]'s purpose of permitting the trustee to avoid transfers as constructively fraudulent, irrespective of the parties' actual intent.

In *In re Bundles*, 856 F.2d 815, 820 (7th Cir.1988), the Seventh Circuit rejected both *Durrett's* 70 percent rule and *In re Madrid's* irrebuttable presumption of validity of all foreclosure sales. Instead, the *Bundles* Court took a case by case approach that included an "all facts and circumstances" analysis of the question of reasonably equivalent value, with a rebuttable presumption that the price obtained at a properly conducted foreclosure sale is

reasonably equivalent value under § 548. *In re Bundles*, 856 F.2d at 824–25. According to the Seventh Circuit, the court must make an assessment in each case of whether the transfer price was the reasonably equivalent value of the property. *Id.* at 821. Among the facts that the Seventh Circuit held should be considered was the fairness of the state law foreclosure procedure under which the sale occurred. If the foreclosure occurred under procedures the bankruptcy court determined were not designed to maximize the sale price, it could find that the price was not a reasonably equivalent value for the property. *Id.* ("[S]tate specific foreclosure procedures might alter the analysis if they were not designed to return to the debtor mortgagor his equity in the property."). Specifically, it instructed that courts should both evaluate state foreclosure procedures to determine whether "there was a fair appraisal of the property, whether the property was advertised widely, and whether competitive bidding was encouraged" and "accord respect to the state foreclosure sale proceedings." *Id.* at 825; *see also, Grissom v. Johnson (In re Grissom)*, 955 F.2d 1440, 1445–46 (11th Cir.1992) (court should analyze circumstances surrounding foreclosure sale).

The United States Supreme Court resolved the conflicting standards set forth in the various cases, including *Durrett, Madrid,* and *Bundles* in 1994 when it decided *BFP* In *BFP*, the Supreme Court overruled all these tests with respect to transfers made through foreclosure sales, holding that consideration paid for transfers effected through foreclosure sales completed in compliance with applicable state law *per se* constitutes reasonably equivalent value, provided that the secured party fully complied with all of the statutory requirements of the state foreclosure law. 511 U.S. at 545, 114 S.Ct. 1757. In addition, in *BFP* the Supreme Court ex-

plicitly stated that its creation of a rebuttable presumption of reasonably equivalent value for purposes of fraudulent transfer statutes was limited to "lawful mortgage foreclosure sale[s] of real property." 511 U.S. at 537, 114 S.Ct. 1757. Hence, it neither applies to foreclosures of personal property nor to foreclosures of real property where there is no sale. It appears that the Vermont legislature has codified the *BFP* rationale and limited the presumption of reasonably equivalent value for purposes of the state foreclosure sale statute. The Vermont statute provides that:

> a person gives reasonably equivalent value if the person acquires an interest of the debtor in an asset pursuant to a regularly conducted, nonconclusive [sic] foreclosure sale or execution of a power of sale for the acquisition or disposition of the interest of the debtor upon default under a mortgage, deed or trust or security agreement.

9 V.S.A. § 2287(b). It is noteworthy that the Vermont statute contains no provision defining reasonably equivalent value for purposes of strict foreclosure.

■ Under the Vermont strict foreclosure law, if no one redeems foreclosed property within the prescribed period, the foreclosing mortgagee obtains full and complete title and has the right to sell the property and retain the surplus, if any. *Stowe Center, Inc. v. Burlington Sav. Bank,* 141 Vt. 634, 637, 451 A.2d 1114 (1982) (*citing Dieffenbach v. Attorney General of Vermont,* 604 F.2d 187, 192 (2d Cir.1979); *Aldrich v. Lincoln Land Corp.,* 130 Vt. 372, 376, 294 A.2d 853 (1972)). There is nothing in the statute to prevent a foreclosing mortgagee with a debt of $2,000 from foreclosing on property worth $100,000 and retaining the property, notwithstanding the colossal surplus value of the property. When such a transfer occurs, the creditor gets a windfall, the debt-

or's other creditors suffer, and the purpose of fraudulent conveyance law—making all of the debtor's assets available to his or her creditors and assuring an equal distribution to similarly situated creditors—is frustrated.

■■ Fraudulent conveyance law aims "to make available to creditors those assets of the debtor that are rightfully a part of the bankruptcy estate, even if they have been transferred away." *Buncher Co. v. Official Comm. of Unsecured Creditors of GenFarm Ltd. P'ship IV,* 229 F.3d 245, 250 (3d Cir.2000) (*citing In re Cybergenics Corp.,* 226 F.3d 237, 241–42 (3d Cir.2000)); *see also, Becker v. Becker,* 138 Vt. 372, 379, 416 A.2d 156 (1980) (purpose of state statute is to prevent the conveyance from depriving creditors of the means of collecting their debts). Fraudulent conveyance statutes, whether under federal or state law, seek to avoid a windfall to the creditor, to prevent a disproportionate loss to the debtor and, especially in bankruptcy cases, to recognize the rights of unsecured creditors to all of the debtor's non-exempt assets, including non-exempt equity in real estate.

■ When a party moves to avoid a transfer that occurred through strict foreclosure, the Court must determine the value of the property transferred and compare it to the outstanding debt obligation as the first step in ascertaining whether the debtor received reasonably equivalent value for the property. To conduct its analysis of reasonably equivalent value, the Court must first identify the yardstick against which the consideration is to be measured. The Court follows the guidance of other courts that have addressed similar questions and holds that in a strict foreclosure context, fair market value is appropriate as the ultimate reference point. "In the vast majority of asset transfers other than real estate foreclosure

sales, the bankruptcy courts can determine worth and reasonably equivalent value by referring to the common-law notion of fair market value." *In re Prince Gardner, Inc.,* 220 B.R. 63, 66 (Bankr.E.D.Mo.1998); *see also, Vermont Nat. Bank v. Leninski,* 166 Vt. 577, 578, 687 A.2d 890 (1996) ("In strict mortgage foreclosure actions, the deficiency is the difference between the fair market value of the premises and the debt"); *In re Viscount Air Services, Inc.,* 232 B.R. 416, 435 (Bankr.D.Ariz.1998) (outside of foreclosure context, "reasonably equivalent value" ordinarily means something similar to fair market value).

The Court recognizes that just as the enforcement of fraudulent conveyance statutes is essential to the law of commercial transactions, bankruptcy administration and general principles of fairness, so too the validity of titles taken pursuant to Vermont's strict foreclosure is a compelling state interest. Thus, the Court adjudicates the instant issue by application of a rule devised to provide as much certainty of title as is possible without eviscerating the fraudulent conveyance powers that are so critical to the administration of bankruptcy estates. The various tests applied prior to *BFP* provide vital guidance on how to assess whether reasonably equivalent value was given in a transfer effectuated without the protections of a statutory sale process.

## B. Creation of a Bifurcated Approach to Assessing Reasonably Equivalent Value in Transfers

■ As a general rule, this Court agrees with the *Bundles* court that a totality of the circumstances, subjective analysis is generally the soundest approach to ascertaining reasonably equivalent value. However, there are some transfers on the one end of the spectrum that have consideration so low as to shock the conscience and which are so obviously close to fair market value at the other

end of the spectrum that the specific facts and circumstances of the transfer in either instance are unlikely to be determinative and an objective test would be both reliable and sufficient. Therefore, the Court creates today a bifurcated approach to this issue. The Court finds that in addressing transfers at either extreme the interest of fostering predictability, avoiding unnecessary litigation, and providing certainty of title outweigh the need for the fact by fact analysis inherent in the subjective approach. Thus, at these two extremes, the objective comparison of debt to fair market value (as advocated by the *Durrett* court) would invoke a rebuttable presumption as to whether the debtor received reasonably equivalent value. For transfers that are at either end of this spectrum, a party wishing to introduce evidence of the totality of the circumstances would do so for the purpose of rebutting the presumption created by the debt to value objective analysis. By contrast, for transfers with consideration that fall between these two extremes, the Court will utilize a totality of the circumstances analysis, considering all relevant facts and circumstances of the specific transfer, without any evidentiary presumptions, to ascertain whether the debtor received reasonably equivalent value.

This bifurcated approach incorporates the objective test of *Durrett* and subjective test of *Bundles,* applies rebuttable presumptions where the debt to value ratio is either particularly high or particularly low (from a market perspective), and requires a case by case analysis. The Court is convinced this is the most balanced and sound means of determining whether a debtor received reasonably equivalent value for a transfer that occurred under Vermont's strict foreclosure process. The approach is designed to provide predictability of title, particularly for transfers with consideration at either end of the spectrum,

and also to preserve the parties' right to present evidence as to the unique circumstances of each case, and ultimately to strike the best balance possible between the state's interest in the certainty of titles created through the strict foreclosure process and the federal bankruptcy law mandate to insure equal distribution to all creditors and a fresh start to debtors.

■■■■ In attempting to limit and identify the range of transfers that would require a totality of the circumstances analysis without the benefit of any evidentiary presumption, we turn to pre-*BFP* law, the guiding principles announced by *BFP,* and current state law on the issues of fraudulent conveyances and strict foreclosure. The Parties have not identified and the Court has not located any decisions construing 9 V.S.A. §§ 2288 and 2289(a) in the context of a strict foreclosure. Therefore, guided by the pre-*BFP* cases and mindful of the need to balance the importance of fairness in foreclosure transfers against the need for certainty in Vermont land titles, the Court finds that it must base its determination on more than the objective test where the debt foreclosed is reasonably close to the property's fair market value. Specifically, this Court concludes that if the debt on the date of transfer is not more than 70 percent of the property's fair market value, then an evidentiary presumption arises that (a) the transfer was for less than reasonably equivalent value and (b) the transfer is presumptively avoidable as a fraudulent conveyance, following the standard attributed to the Fifth Circuit in *Durrett.* At the other end, when the debt on the date of transfer is at least 90 percent of the property's fair market value, the opposite evidentiary presumption is invoked, namely that (a) there was reasonably equivalent value given as consideration for the transfer and (b) the transfer is presumptively not subject to avoidance as a fraudulent conveyance. In all circumstances, the presumption is re-

buttable and the debt and value ratio are both computed as of the date of the transfer. Including these guideposts ensures consistency with the principles enunciated by the Supreme Court in *BFP. BFP,* 511 U.S. at 538–39, 114 S.Ct. 1757 (Language of § 548 ("received less than a reasonably equivalent value in exchange") "requires judicial inquiry into whether the foreclosed property was sold for a price that approximated its worth *at the time of sale.*") (emphasis added).

## C. Application of this Bifurcated Approach to the Instant Facts

The first step in this bifurcated approach is to determine whether the debt to value ratio as of the date of the transfer falls within one of the extremes such that a purely objective analysis might be sufficient. In this case, the debt against the Subject Property as of the Transfer Date was $110,927.64, and the fair market value of the Subject Property as of the Transfer Date was $151,200.00. *In re Chase,* 2005 WL 280436, *2 (Bankr.Vt., February 3, 2005) (doc. # 42). This results in a debt to value ratio that is neither less than 70 percent nor more than 90 percent. Thus, neither presumption is applicable and the Court must apply the other component of the bifurcated analysis and examine the totality of the circumstances to determine whether the debtor received reasonably equivalent value. This totality of the circumstances analysis includes consideration of all facts and circumstances that are relevant to the transfer in question and will vary from case to case. *Id.*

■■■■ There are some factors that will always be pertinent to the question of whether a transfer is properly categorized as a fraudulent transfer statute based upon a lack of reasonably equivalent value. These include: (1) the extent to which the transfer created a windfall to the foreclos-

ing creditor; (2) whether the debtor has general unsecured creditors; (3) the economic impact of avoidance on these creditors; (4) the circumstances under which the debt was created; (5) the conduct of the foreclosure action; (6) any unique or extraordinary attributes of the property; (7) the conduct of the parties in the bankruptcy case; and (8) whether the windfall may be offset through the bankruptcy case.

■ In the instant case, the foreclosing creditor received title to property that had a value that exceeded the debt by approximately $40,000, and thus received a $40,000 windfall as a result of the transfer. Although a ratio of 73 percent of value is not *ipso facto* short of reasonably equivalent value, the amount the debtor would have received if fair market value had been paid is essential to the Court's analysis. Here, that 28 percent corresponds to a sum of money that would have a meaningful impact on the Debtor's creditors. Based upon the total due on all filed claims in this case, and assuming that the second mortgage on the Subject Property is treated as unsecured, the Debtor's estate has unsecured claims of approximately $102,000. Under the Debtor's current chapter 13 plan, the unsecured creditors will receive a dividend of 7.67 percent. The Trustee contends that if he were to recover $40,000 from the Defendant, he would be able to distribute a dividend to unsecured creditors equal to 46.74 percent of their claims. This nearly 40 percent increase in the dividend for unsecured creditors is significant. The Court therefore finds that application of the first factor weighs in favor of granting the Trustee the relief sought.

The Debtor gave the Defendant the subject mortgage in connection with renovation work the Defendant completed on the Subject Property. While under different facts the circumstances surrounding the creation of the debt might provide insight as to whether the debtor received reasonably equivalent value, this is not one of those cases. The record discloses no irregularities or compelling circumstances surrounding the creation of the debt that underlies the transfer. Accordingly, this factor is neutral and does not influence the Court's analysis.

Likewise, there are no allegations of irregularities with respect to the conduct of the foreclosure action that warrant a particular conclusion *vis a vis* whether the transfer constituted reasonably equivalent value. For example, the Parties have not raised, nor does the record suggest, any basis for finding that the Debtor did not receive sufficient notice or that her due process rights under the strict foreclosure process have been violated.

The Court next inquires as to whether the Subject Property had any unique or extraordinary attributes as of the Transfer Date that justify deviating from the formula that uses fair market value as the baseline for measuring reasonably equivalent value. In this case, the record reflects no such attributes.

The last two elements the Court will consider deal with post-transfer circumstances. In looking at the Parties' conduct through the course of this bankruptcy case, it is evident that soon after the Debtor filed her bankruptcy case the Defendant entered into a cooperative strategy with Debtor, aimed at moving this case toward a successful reorganization without litigation. While such post-transfer cooperation by creditors does not directly affect whether reasonably equivalent value was exchanged, it may affect the scope of the trustee's recovery under the facts and circumstances presented. It is significant in this case that in the Debtor's Second Amended Plan (that was confirmed eight months after the Transfer Date), the De-

fendant agreed to allow the Debtor an opportunity to refinance the mortgage obligation by a date certain (*see* docs. ## 16, 19, and 21). Unfortunately, the Debtor ultimately failed to obtain such financing. and there is no evidence before the Court as to why the Debtor was not able to complete a refinance, whether the lack of a refinance was caused by the conduct of either party, or what consideration, if any, the Debtor delivered to the Defendant in connection with this agreement. What is clear is that the agreement had the potential to increase the dividend to unsecured creditors, to allow the Debtor to retain the property and to get the creditor immediate cash. In sum, if the joint strategy had succeeded all stake holders would have benefited. In the interest of promoting cooperation between creditors and debtors, the Court finds that although no actual benefit flowed to the Debtor's estate, the Defendant's willingness to allow the Debtor extra time to refinance warrants an adjustment in favor of the Defendant to any remedy granted the Trustee.

■ The Trustee requests that the Court order the Defendant to pay the difference between debt and value (for distribution to the Debtor's unsecured creditors), with interest from the Transfer Date. The Court finds that to award interest from the Transfer Date through the date of satisfaction would in effect penalize the creditor for cooperating with the Debtor. The Defendant ought not to liable for any interest prior to the period when the cooperation ended. Moreover, although the determination of reasonably equivalent value should generally be a straightforward process, in the instant case it was time consuming and complicated by the fact that it was an issue of first impression and went back and forth between this court and the state court, required several briefing periods and an evidentiary hearing before resolution. Thus, under the facts of this case, it would also be unfair to

require the Defendant to pay interest for the period of time that is directly connected to the adjudication of this legal issue of first impression. Accordingly, the Court finds that the Defendant will not be liable for any interest on the difference between the debt and value from the Transfer Date through the date of this decision.

Finally, the Court considers whether the Defendant's economic windfall will be offset in the administration of the instant bankruptcy case. The Defendant argues that the legal fees and appraisal fees he has incurred over the course of the litigation are recoverable under the terms of his mortgage and that the Court should take into consideration those post-transfer fees in determining whether the Debtor received reasonably equivalent value. Since the probative date for the reasonably equivalent value analysis is the Transfer Date, this post-transfer factor has value only in the determination of the remedy awarded. In the instant case it is premature to factor in this element. The Defendant's post-transfer claims are neither liquidated nor before the Court and therefore no determination can be made at this time with respect to the amount of offset, if any, that is due the Defendant. To the extent that the Defendant has a valid claim under his mortgage for post-transfer costs or for administrative expenses, he must apply for allowance, then the Trustee will file any objections he deems appropriate and the Court will determine the validity and amount of such claims. Once that determination is made, the Trustee shall credit any such allowance against the amount due under the Trustee's judgment. Thus, the Defendant may obtain some relief if he is able to prove he has a valid post-transfer claim against the bankruptcy estate, as an offset to the judgment, but it will not alter the computation of reasonably equivalent value and the ultimate determination of whether the transfer of the Subject Prop-

**686**

erty through strict foreclosure was a fraudulent conveyance.

Application of the delineated factors persuades the Court that the transfer of the Subject Property at a time when it had a value of $151,200.00 and the debt underlying the foreclosure was $110,927.64 does not constitute an exchange for reasonably equivalent value under either the state or federal statute.

### CONCLUSION

Since the Debtor did not receive reasonably equivalent value for the Subject Property when it was transferred to the Defendant through strict foreclosure, that transfer constitutes a fraudulent conveyance. Thus, the Trustee is entitled either to avoid the transfer or obtain a judgment against the Defendant in a sum equal to the difference between the debt and the fair market value as of the date of the transfer. The Trustee has moved for relief under the state statute and seeks a judgment rather than avoidance of the transfer. The Court finds that form of relief to be appropriate under the circumstances of this case.

Accordingly, the Court finds the Trustee is entitled to recover from the Defendant in the amount of $40,272.36, under 9 V.S.A. § 2292.

This constitutes the Court's findings of fact and conclusions of law.

The Trustee is directed to submit a judgment order consistent with this Memorandum of Decision accompanied by an affidavit setting forth his computation for the amount due and an explanation for each credit applied at this time, within 10 days.