336 B.R. 681 (2005)
In re Lauren Jo CHASE, Debtor.
Jan M. Sensenich et al, Plaintiffs,
v.
Robert Molleur, Defendant.
Bankruptcy No. 02-10582. Adversary No. 03-1058.
United States Bankruptcy Court, D. Vermont.
December 23, 2005.
*682 Jan M. Sensenich, White River Junction, VT, Trustee, pro se for Plaintiffs.
Oliver L. Twombly, Barre, VT, for Defendant.

MEMORANDUM OF DECISION
GRANTING IN PART AND DENYING IN PART DEFENDANT'S APPLICATION FOR POST-TRANSFER LEGAL FEES AND APPRAISER FEES
COLLEEN A. BROWN, Bankruptcy Judge.
The Defendant has filed an Application for Post-Transfer Legal Fees and Appraiser *683 Fees (doc. # 68) (the "Application") seeking reimbursement of the attorneys' fees and appraisers' fees he incurred in protecting his interest in the collateral which is the subject of this adversary proceeding. For the reasons set forth below, the Court grants the Application in part and denies it in part.

JURISDICTION
The Court has jurisdiction over this adversary proceeding and the Application pursuant to 28 U.S.C. §§ 157(b)(2)(A), (B) and 1334.

PROCEDURAL BACKGROUND
The Trustee initiated this adversary proceeding to avoid a transfer of the Debtor's real property to the Defendant that occurred pre-petition pursuant to Vermont's strict foreclosure statute, that the Trustee asserted was a fraudulent conveyance. See doc # 1. The question of whether strict foreclosure transfers could be avoided as fraudulent conveyances presented an issue of first impression. The Court addressed the complaint in four phases. In the first phase of this proceeding, the Court found that the subject conveyance occurred pre-petition, on the date of the judgment of foreclosure, October 26, 2001 (the "Transfer Date"), and hence was within the time period covered by the fraudulent conveyance statute. Sensenich, et al. v. Molleur, 2004 WL 2915331 (Bankr.D.Vt.2004) (docs. # 22, 23). In the second phase, the Court determined that, as a matter of law, compliance with the Vermont strict foreclosure process does not create a presumption of "reasonably equivalent value" and that a transfer effectuated under the strict foreclosure process may be vulnerable to an avoidance action, based upon a case-by-case determination of reasonably equivalent value. Sensenich, et al. v. Molleur, 2005 WL 18971 (Bankr.D.Vt.2005) (doc. # 35). The third phase of the analysis began on January 28, 2005, when the Court considered evidence as to the value of the transferred property and the amount of the debt due and owing as of the Transfer Date. At the trial, the Parties stipulated that the amount of the debt due and owing to the Defendant as of the Transfer Date was $110,927.64 and the Court determined that the value of the subject property on the Transfer Date was $151,200. Sensenich, et al. v. Molleur, 2005 WL 280436 (Bankr.D.Vt.2005) (doc. # 42). The fourth phase of the analysis was a determination of whether, given the amount of the debt and value of the property on the Transfer Date, the Debtor had received reasonably equivalent value when she was released from this debt in exchange for the transfer of the subject property to the Defendant. The Court determined that the release of a debt in the amount of $110,927.64 in exchange for the transfer of property worth $151,200 did not constitute reasonably equivalent value and accordingly awarded a judgment to the Plaintiffs in the amount of the difference, $40,272.36. Sensenich, et al. v. Molleur, 328 B.R. 675 (Bankr.D.Vt.2005) (doc. # 56), see also Order dated August 3, 2005 (doc. # 57) and Judgment dated August 15, 2005 (doc. # 62). Thus, the Court is now poised to address the question of whether the Defendant may have a credit against the judgment in a sum equal to the legal fees and appraisers' fees he incurred in this litigation.
Each of the parties has submitted memoranda of law on both whether there is a legal basis for awarding attorneys' fees and appraisers' fees for services rendered after a strict foreclosure judgment has been entered, and whether the specific attorneys' fees and appraisers' fees the Defendant seeks are reasonable.

DISCUSSION
There is a straightforward formula for determining the allowance of professional *684 fees in bankruptcy cases. The Court must first verify that the Bankruptcy Code permits an award of fees in the context of the legal issue presented, and if so, whether the facts presented meet the statutory prerequisites for an allowance of fees, and if so, whether the particular fees sought are reasonable. Although there are some unusual circumstances and unprecedented legal questions present in this adversary proceeding, the formula is still applicable and appropriate for analyzing the Defendant's application for recovery of his legal fees and appraisers' fees.
Based upon the finding that debt owed to the Defendant was less than the value of the collateral securing the debt, the Court finds that the Defendant is an oversecured creditor in this case, and therefore may be entitled to an allowance of reasonable professional fees under 11 U.S.C. § 506(b).[1]
To the extent that an allowed secured claim is secured by property the value of which . . . is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs, or charges provided for under the agreement under which such claim arose.
See § 506(b). The Defendant has identified the pertinent agreement that would give rise to this allowance of fees as paragraph 7 of the mortgage deed. It provides Defendant with a contractual right to recover reasonable attorney's fees and expenses under certain circumstances.
7. Attorney's Fees and Expenses:
It is expressly agreed that there shall be included in the indebtedness secured by this mortgage, reasonable attorney's fees and expenses which are incurred by the mortgagees [sic] in protecting, prosecuting, realizing, maintaining and preserving its interest and/or lien in the mortgaged premises and in the secured indebtedness. The mortgagee's right of recovery of reasonable attorney's fees and expenses shall apply to any bankruptcy proceeding, to any judicial or nonjudicial foreclosure proceeding, and to any other type of activity involving the mortgaged premises in which the mortgagee is engaged to protect, collect or realize the collateral and/or the secured debt.
See Exhibit 1 to Defendant's Application for Post-Transfer Legal Fees and Appraiser Fees (doc. # 68), par. 6. Under this contract provision, the Defendant seeks allowance of the following fees:
(a) Defendant's post-transfer attorney's fees to Thomas P. Donnellan, Esq. in the amount of $2,393.10;
(b) Defendant's post-transfer attorney's fees to Oliver L. Twombly, Esq. in the amount of $23,434;
(c) Defendant's post-transfer appraiser [sic] fees in connection with this case to Richard L. Kettinger in the amount of $2,705, and to John Stevens in the amount of $480; and
(d) making in all a request of $29,012.10 in credit against the judgment.
See Defendant's Application for Post-Transfer Legal Fees and Appraiser Fees (doc. # 68), par. 6.
There are two factors the Court finds to be unique to the instant case and considers to be critical to the analysis of the Application. First, the "agreement under which the claim arose" was the mortgage, and there is a strong argument that the mortgage was extinguished by the entry of the judgment of foreclosure. Second, the agreement giving rise to the mortgagee's right to collect any reasonable attorney's *685 fees and expenses it incurs in collecting its debt, or protecting its interest in the collateral, is intended to ensure that the mortgagee is repaid in full net of any costs incurred in the collection of the debt or protection of the collateral; however, here the subject fees were incurred in protecting and defending what the Court has determined to be a fraudulent conveyance.
The Court finds that the language in the pertinent mortgage deed provision is sufficient to warrant an award of professional fees, as a credit against the judgment, to the extent the Defendant reasonably believed the services employed were necessary to the protection of his interest in the Debtor's property. In re United Merchants and Manufacturers, Inc., 674 F.2d 134 (2nd Cir.1982). However, the Court finds that once the determination was made as to the value of the propertyand it became clear that the Defendant had already been "paid" a sum in excess of his debtthe Defendant was no longer protecting or collecting his debt but rather was trying to protect a windfall, and from that date forward the subject contractual provision was inapplicable.
The Plaintiffs argue that the Defendant is not entitled to any professional fees because, under the clear language of § 506(b), such fees may be recovered by a creditor only if there is an agreement which authorizes it to collect them, and here the mortgage was no longer a valid contract once the judgment of foreclosure was entered. The Defendant emphatically rejects this "merger" argument, relying on the case of In re Salisbury, 58 BR 635 (Bankr.Conn.1985) to support the proposition that, even in a strict foreclosure context, the contractual right of the mortgagee to collect its costs survives the entry of judgment. This is a correct reading of the Salisbury case. The Connecticut bankruptcy court quoted the language of In re City Savings Bank of Bridgeport v. Miko, 1 Conn.App. 30, 467 A.2d 929 (1983), that where "the parties contemplated, and the [creditor] intended that the obligation concerning attorneys' fees continue until the debt was completely collected, the obligation [for attorney's fees] could extend beyond the judgment date" and specifically found that attorney's fees could be awarded an oversecured creditor "when that creditor required legal services in the bankruptcy to protect its debt." 58 BR at 638. This Court finds the reasoning and conclusions of its sister bankruptcy court to be compelling, and consequently finds that the pertinent attorney's fee provision (also known as a fee shifting provision) in the Defendant's mortgage deed survived the judgment of foreclosure.
However, that does not conclude the analysis. The instant case is distinguishable from Salisbury in that the creditor in Salisbury was seeking attorney's fees in connection with its efforts to collect a deficiency. Its debt had not been satisfied by the transfer of the property. The Defendant posits that this is a "distinction without a difference." However, there is an indubitably material distinction between a creditor who seeks to collect the attorney's fees he incurred in trying to collect the balance of his outstanding debt and the creditor who seeks to collect the attorney's fees he incurred in trying to protect a windfall that he obtained through a fraudulent conveyance. To suggest otherwise is preposterous. The debtor in a loan transaction expects, and is rightly asked, to pay the expenses its secured creditor incurs in trying to collect the debt the debtor owes. However, if the creditor is overpaid, there is no basis for expecting the debtor to pay the expenses the creditor incurs in trying to retain his undeserved surplus. The Plaintiff offers a modified fact pattern to *686 illustrate this point more dramatically, substituting cash for real estate:
Assume lender lends $100,000 to debtor. Loan documents provide that lender can add any attorney's fees or other reasonable costs of collection to the debt. Borrower defaults. Lender sues and gets a judgment. Interest accrues on the judgment. At point in time X, the debt is, let's say, $111,000. Borrower is given, by a wealthy and benevolent relative, a cashier's check for $151,000. In his rush to settle the debt, borrower (in either an abundance of trust or stupidity) simply endorses the cashier's check over to lender and sends it with a letter requesting his $40,000 in change be sent back in the return mail. Lender simply deposits the check in his account and writes back that he has decided to keep the whole thing for the aggravation of having to deal with the debtor and indicates that if the debtor wants his $40,000 in change, he will have to sue for it. Debtor commences suit to recover the excess value giving to lender in satisfaction of the debt. Debtor wins, but lender argues that he should get an offset from the judgment for his costs in defending borrowers [sic] suit. Borrower, of course, had to pay his own costs to get his judgment. Trustee suggests that the argument would be quite strong that the fee shifting provision in the loan documents would not apply to defense of "keeping the extra value" precisely because the moment the lender received the $151,000, he [sic] loan was totally satisfied.
See Plaintiffs' Reply to Defendant's Memorandum in Support of His Application for Post-Transfer Legal Fees and Appraiser Fees (doc # 82), pp. 2-3. The Plaintiff acknowledges that this is not an identical or perfect illustration since the creditor in this hypothetical knew he was overpaid upon receipt of the check. However, the Court finds that there is didactic value in considering the issue presented in its purest form, without the layers of complexity added by the strict foreclosure, fraudulent conveyance and valuation components of the case. Here, the critical question is when did the creditor know that he was overpaid. The Court finds that this was evident when the Court fixed the value of the property, on February 3, 2005.
Once the creditor knew that he had received property with a value that exceeded the amount of the debt, the creditor could no longer rely upon the fee shifting provision. He was no longer in a position of protecting his right to collect the debt. He had moved to a situation of trying to retain a surplus. He was free to do so, but he could not shift the costs of doing so to the Debtor. Neither the language of § 506(b) nor the language of paragraph 7 of the mortgage deed authorize the Defendant to collect these costs from the Debtor. Thus, the Court finds no legal basis for granting the Defendant any legal fees or appraisers' fees after the value of the property was established.
The Defendant has raised the equitable arguments that he should be allowed to shift these costs to the Plaintiff because: (1) this is a question of first impression, which, by definition required extensive argument, briefing and hearings; (2) he is an individual, and unlike financial institutions, he does not make mortgages on a regular basis; and hence, (3) he does not have the resources to absorb these costs or the opportunity to spread the costs to a portfolio of many mortgages. As a corollary, the Defendant points out that the Trustee zealously prosecuted this adversary proceeding, as the Plaintiff, specifically to make new law that would inure to the benefit of many estates and have an impact well beyond the facts of this particular *687 case. The Court is not persuaded that these equitable arguments justify an award of any fees and expenses incurred after the determination was made that the value of the property exceeded the amount due on the debt, especially in light of the fact that the Court already afforded the Defendant relief on equitable grounds in determining the amount of the judgment. In its determination of the judgment, the Court declined to award interest for the period of time directly connected to the adjudication of legal issue of first impression, and did not allow the Plaintiff any interest on the judgment from the Transfer Date to the date of decision. Sensenich, et al. v. Molleur, No. 03-1058, 328 B.R. 675 (Bankr.D.Vt. 2005) (doc. # 56). The Court specifically took into account that the Defendant is an individual, that this is a case of first impression, and that this Court of equity has the duty to fashion remedies that are fair under all the circumstances when it computed the amount of the judgment. Therefore, the Court finds there is no basis for considering these equitable factors in the calculation of the credit against the judgment for professional fees. To do so would be to give the Defendant the benefit of these considerations twice.
Having found that an award of professional fees for a portion of the litigation is appropriate, and the amount of that award is not influenced by equitable considerations, the Court turns to the question of reasonableness. Only reasonable fees are permitted under § 506(b) and the pertinent contract provision states unequivocally that "It is expressly agreed that there shall be included in the indebtedness secured by this mortgage, reasonable attorney's fees and expenses which are incurred by the mortgagees . . ." See Exhibit 1 to Defendant's Application for Post-Transfer Legal Fees and Appraiser Fees (doc. # 68), par. 7 (emphasis added). Although the Plaintiffs have consistently opposed the allowance of any professional's fees as a credit against the judgment, the Plaintiffs have not objected to the reasonableness of any of the fees or expenses sought. The Court has analyzed the time sheets and invoices submitted, and finds that the fees sought during the period prior to the determination of the property's value are generally reasonable. The Court finds the services rendered by the Defendant's two attorneys and two appraisers during this time period were reasonable, necessary and encompassed by the language of the pertinent mortgage deed provision, In re United Merchants and Manufacturers, Inc., 674 F.2d 134, 137-38 (2nd Cir.1982) (applying New York law); In re Salisbury, 58 B.R. 635, 639 (Bankr.Conn. 1985); see also, In re University Towers Owners' Corp., 278 B.R. 302, 305 (Dist.Conn.2002), with two categories of exception. The two reductions the Court has made are to deny interest on the attorney's fees and to limit compensation for travel to one-half of the professional's billing rate.
The Court finds no evidence in the record that the professionals have charged one-half their usual billing rate for travel, and therefore it sets the fee awards to reflect a reduction consistent with that requirement. Likewise there is no evidence that the interest charges shown on Mr. Twombly's invoices have been backed out of the amount sought. Accordingly, the professionals' fees incurred by the Defendant through the date of the determination of the property's value, as modified herein, are approved and allowed, as a credit against the judgment, effective as of the date of judgment.
Mr. Twombly seeks attorney's fees and expenses in the amount of $23,434. The Court reduces this amount by (a) the fees *688 and expenses incurred after February 3, 2005, (b) the interest charges and (c) one-half of the time billed for travel to and from Court hearings.[2] Thus, the Defendant is awarded reimbursement of the professional fees he owes to Mr. Twombly in the amount of $19,715 and denied reimbursement of the professional fees he owes to Mr. Twombly in the amount of $3,719. With respect to Mr. Kettinger's invoices, the Court finds that there should be reductions from the amount sought for (a) travel time and (b) an apparent duplication in billing of time spent at the trial.[3] The Court, therefore, reduces the amount to be reimbursed to the Defendant for fees owed to Mr. Kettinger by $350 and grants reimbursement in the amount of $2,355. The Court allows the Defendant reimbursement in full of the fees he paid to attorney Donellan and appraiser Stevens, $2,393.10 and $480, respectively.

CONCLUSION
For the reasons set forth above, the Court finds that the Defendant is entitled to a credit against the judgment in an amount equal to the sum of attorney's fees and appraiser's fees incurred prior to February 3, 2005 (the date the Court determined the value of the property on the Transfer Date), minus the adjustments described above. Therefore, the Court grants the Defendant a credit against the judgment entered herein in the amount of $24,943.10, nunc pro tunc to the date of the judgment, and denies the Defendant reimbursement, in any form, of the remaining $4,069.
NOTES
[1] Unless otherwise noted, all statutory references are to Title 11 United States Code, prior to the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005.
[2] Mr. Twombly has billed for travel time on four dates prior to February 3, 2005 (6/14/02, 3/11/04, 10/7/04, 1/28/05); the Court presumes travel time each day was two hours and therefore reduces the fees sought each of these four days, by the amount Mr. Twombly bills for one hour of legal services, or $150, for a total reduction of $600.
[3] Mr. Kettinger has billed for travel time at his full hourly rate on an October 15, 2003 invoice and on a letter describing the fee due for the January 28, 2005 trial. The Court presumes it was one hour of travel each way and reduces the amount due on each of these invoices by $100. Additionally, Mr. Kettinger's invoice dated January 31, 2005 charges for the January 28, 2005 "travel time and expert witness fee," even though according to a letter dated January 28, 2005 from Mr. Kettinger, he had already been compensated $1,000 for "10 hours of testimony @ $100 per hour on the Robert Molleur hearing." Hence, the Court finds that 2.5 hours shown on the January 31st invoice is an error of duplicate billing, and the Court, consequently, reduces the fees allowed for Mr. Kettinger's January 28th professional services by $250, for a total reduction of $350.